## WILLIAM S. LOVELL *versus* WILLIAM MINOT.

A loan by a guardian, upon the promissory note of the borrower, payable in one year with interest, secured by a pledge of shares in a manufacturing corporation, the amount of the loan being about three quarters of the par value of the shares, and less than three quarters of their market value, was *held* to be an investment made with sound discretion ; and although the borrower failed before the note became due, and the shares fell in value below the amount of the note, the guardian was *held* not to be responsible for the loss.

And the guardian having sold the shares and taken the purchaser's note for the price, with two endorsers and the notes of another person secured by a mortgage on land, he was *held* to have exercised a sound discretion, and not to be responsible for a loss occasioned by the failure of all the parties to the notes and a fall in the value of the mortgaged premises.

THIS was an appeal from a decree of the Probate Court for the county of Suffolk, passed in June 1836.

By a statement of facts it appears, that on May 23, 1825, William Minot, the appellee, was appointed guardian of Elizabeth M. Gayetty, a minor, now the wife of William S. Lovell, the appellant, and in July following he received, as guardian, from the executor of her father the sum of $1,463. On the 18th of July he lent a portion of this money, to wit, $1333·33, and two other sums belonging to the minor's brothers, (also under his guardianship,) amounting in the whole to $3,700, to an individual, on his promissory note payable to the guardian in one year, and secured by five shares in the Nashua Manufacturing Company. The par value of these shares was then $1,000 a share, and the market price was at an advance above par.

In 1826 James Savage, Esquire, as guardian and trustee, lent to the same individual $12,000, payable in two and three years, on the security of shares in Nashua Manufacturing Company, at the same rate at which Minot took them. Other loans were made on the security of the same stock at the same rate.

In May 1826, the borrower of the sum of $1333·33 above mentioned became insolvent and unable to pay his note at maturity, and the shares fell so much in value as to be an inadequate security for the note.

In March 1833, the guardian purchased of one of the brothers of the minor, for the sum of $101·40, twenty-eight hundredths of a share in the Nashua Manufacturing Company, for the purpose of giving to the minor two whole shares as her portion of the five.

On November 5, 1833, the guardian sold the two shares to H. H. Fuller for $2,000, and took as security two notes of H. H. Fuller for $1,000 each, endorsed by E. Fuller and R. L. Porter, payable in one and two years, with interest; also four notes of D. Young, a shopkeeper in Lowell, to E. Fuller, payable in two, three and four years, for $2,011 in the whole, and endorsed by E. Fuller to the guardian. These four notes were secured by two mortgages of lands in Lowell, made by Young to E. Fuller, and by him assigned to the guardian.

Since the sale the stock in the Nashua Manufacturing Com-

Lovell
v.
Minot.

pany has risen to the value of $800 a share.   Before any one of the notes taken on the sale became due, all the promisors and endorsers failed.   The guardian has not foreclosed the mortgages, and the lands mortgaged are of less value than the debt.

The appellant claims the amount of the ward's money invested in the manner above stated, with interest, deducting therefrom the sums paid from time to time for the current expenses of the ward, according to the guardian's account, and $100 for the guardian's own services.   The guardian declines paying the same, but tenders an assignment of the mortgages and notes above mentioned, and claims a balance of $86, advanced from his own funds, and $100 for his services.

The judge of probate decreed, that upon the guardian's assigning to Lovell the promissory note first mentioned, for cash lent as stated in his account, with the collateral security taken to secure the payment thereof, he the guardian be allowed therefor as stated in his account, and the other charges therein made having been admitted to be correct, that the account be allowed.

From this decree the appeal was claimed.

*March* 19*th.*   *E. Hersey Derby*, in support of the appeal, contended that the loan to an individual, with a pledge of shares in a manufacturing corporation as collateral security, was not a proper and justifiable investment by the guardian ; *Caffrey* v. *Darby*, 6 Ves. 495 ; *Thompson* v. *Brown*, 4 Johns. Ch. R. 629 ; *Holmes* v. *Dring*, 2 Cox's Ch. Rep. 1 ; *Trafford* v. *Boehm*, 3 Atk. 443 ; *Smith* v. *Smith*, 4 Johns. Ch. R. 284.

The sale to Fuller was made at the par value of the shares, when the market value was from 20 to 30 per cent. below par. This shows that the securities taken for payment were considered by both parties as uncertain and hazardous, and this uncertainty was the only reason which induced Fuller to give so much more than the market value.   It was the duty of the guardian to make the payment absolutely secure, even if for that purpose he should have been obliged to sell for a small price.   Real estate in Lowell was subject to great fluctuation in value. *Hancom* v. *Allen*, 2 Dickens, 498 ; *Adye* v. *Feuilleteau*, 1 Cox's Ch. R. 24 ; *Ex parte Calthorpe*, 1 Cox's Ch R. 182 ; *Pocock* v. *Reddington*, 5 Ves. 794.

*S. Hubbard*, for the appellee, relied on *Harvard College* v. *Amory*, 9 Pick. 446.

SHAW C. J. delivered the opinion of the court. The merits of this case depend upon the question, whether the loan to an individual, upon his promissory note, with a pledge of shares in a manufacturing company as collateral security, was a suitable and proper investment for a guardian to make, or whether it was so unsuitable as to make the guardian personally responsible for the loss.

It is not suggested in the facts, nor in the argument, that any neglect or want of good judgment was chargeable to the respondent, other than what may be inferred from the fact of making such an investment. The rule claimed by the appellant, that no investment can be considered safe or can be approved by a probate court or court of equity, except in public securities, however well supported by authorities, as a rule established in English courts of equity, is wholly inapplicable to this country, and untenable. In fact there are no public securities in this country, which would answer these requisitions of an English court of equity. The rule was well laid down in *Harvard College* v. *Amory*, 9 Pick. 461, that " all that can be required in such cases is, that the trustee shall conduct himself faithfully, and exercise a sound discretion ; " and by this rule the Court are of opinion, that the present case must be governed. Such is the variety of stocks and funds, including loans on mortgages, in which prudent and discreet men make investments, and those intended to be, to a considerable degree, permanent, and such is the fluctuating character of all funds, that it seems difficult if not impossible to lay down any rule, at once just, and practicable, and broad enough to meet all the cases. See *Case of Calhoun's Estate*, 6 Watts's R. 185 ; *Knight* v. *Earl of Plymouth*, 3 Atk 480 ; *Thompson* v. *Brown*, 4 Johns. Ch. R. 628.

Taking this to be the rule, the Court are of opinion that the guardian acted in good faith, and with sound discretion, in making the investment which he did. He took the note of a person then in good credit, with a pledge of stock as collateral security, at the rate of about three quarters of ts par value, and less than three quarters of its market value.

It was objected that this was an injudicious and indiscreet investment, because it exposed the funds to the risks and hazards of trade, and the rule was cited and relied on, that if a trustee puts the trust fund into trade, he shall account for the profit if any is made, and shall make good the capital, if any portion of it is lost.   There would have been more ground for this argument, had the money been invested in the manufacturing stock, in which case the profits would have been contingent.   But it was not so ; it was a loan at a fixed interest of six per cent., and the transaction no further exposed the capital to the hazards of trade, than as it affected the value of the pledge.   But at the rate at which these shares were taken as collateral security, there was room for great fluctuation, and they might fall twenty-five per cent. without leaving the loan insecure.

The subsequent transaction in the sale of these shares, is open to the same considerations ; it was conducted with good faith and sound discretion, and though, as events turned out, in consequence of the failure of the purchaser, and of his two indorsers, and of the debtor on the mortgage given for collateral security, it would have been better and for the interest of the ward, if the shares had not been sold, yet this could not be foreseen, and is no proof of negligence or want of sound discretion.

The Court are therefore of opinion, that there was no error in the decree of the Probate Court, allowing the respondent's charge of $1333·33, as cash invested, and in this respect, the decree of that court is affirmed