COMMONWEALTH *vs.* DONALD L. STOUT.

Middlesex.    May 5, 1969. — June 23, 1969.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Accessory. Practice, Criminal,* New trial; Fair trial; Exceptions: failure to save exception; Argument by prosecutor; Mistrial.

Evidence at the trial of an indictment for being an accessory before the fact to the crime of confining for the purpose of stealing from a bank, including evidence warranting a finding that the defendant supplied guns employed in an unsuccessful attempt to rob the bank, justified a finding that he was guilty [240–241]; a conviction was not precluded by the circumstance that the evidence showed that the defendant handed the guns to one also charged with being an accessory before the fact rather than to the principal named in the indictment of the defendant [241].

The revision of G. L. c. 278, § 29, by St. 1966, c. 301, broadened the discretionary authority of the trial judge to grant a new trial in a criminal case, but it did not alter the scope of review by this court of a denial of a new trial by the judge nor change the rule that errors not excepted to at the trial cannot, as of right, be the basis of allowing a motion for a new trial. [242]

No abuse of discretion appeared in denial of a motion for a new trial of a criminal case based on alleged newly discovered evidence consisting of a photograph, affidavits and statements claimed to contradict evidence against the defendant introduced at the trial. [243]

There was no merit in a contention by the defendant in a criminal case that he did not receive a fair trial by reason of certain aspects of the conduct of the trial by the judge, coupled with ineffectiveness of the defendant's trial counsel. [243–244]

In view of instructions to the jury at a criminal trial, there was no reversible error in denial of a motion for a mistrial based on argument of the prosecutor to the jury that the Commonwealth's case was so strong

against the defendant that he, after consultation with his counsel, "had to voluntarily give up this constitutional right not to testify." [244]

INDICTMENT found and returned in the Superior Court on November 7, 1967.

The case was tried before *Beaudreau, J.*

*Daniel F. Featherston, Jr.* (*Daniel Klubock* with him) for the defendant Stout.

*Francis K. Monarski*, Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant was found guilty by a jury and sentenced to the Massachusetts Correctional Institution at Walpole on an indictment charging him with being an accessory before the fact to the crime of confining for the purpose of stealing from a bank. The trial was made subject to G. L. c. 278, §§ 33A–33G.

The defendant was tried in company with Vincent Kebarian, an active participant in the robbery attempt, and with Robert Dussault and James Balakin, Jr., indicted as accessories before the fact.[1]

The defendant, having designated various assignments of error, presses four before us: (1) the trial court erred in denying his motion for a directed verdict; (2) there was error in the denial of his motion for a new trial; (3) he was not given a fair trial meeting the requirements of due process; and (4) the denial of his motion for a mistrial was error.

The nub of the charge against the defendant is that he supplied certain guns which were employed in an attempt to rob a bank in Lowell on September 14, 1967, which attempt was aborted by effective police work. We refer to the pertinent evidence in a discussion seriatim of the assignments which have been argued.

1. The evidence against the defendant can be summarized as follows. One Christopher Dussault, a brother of Robert Dussault, was on September 5, 1967, in Robert's apartment

---

[1] The only appeal presently before us is that of the defendant.

where there was discussion about a planned bank robbery. Christopher asserted they needed additional weapons. Robert made a telephone call, following which Balakin and the defendant appeared. Balakin was in possession of two guns, stated that they would cost $25 apiece, and inquired whether after the robbery the others present would "take care of us." Robert assured Balakin, "I'll take care of you." The defendant was present at the conversation, heard what was said, and "turned around mumbling." On this occasion two other individuals, one Hunt and one Crow, were also present, together with Kebarian.

Paul Dussault, a third Dussault brother, testified that on September 12, 1967, two days before the robbery attempt, he, Hunt and Kebarian were at his apartment when the defendant and Robert Dussault drove up outside, and Paul saw the defendant pass a box and a bag to Robert. Robert then alighted from the automobile and came upstairs to the apartment. The box contained a thirty-eight calibre revolver and the bag a thirty-two automatic. Robert gave the guns to Kebarian. After some talk about the calibre of one of the guns, Robert told Paul he was on his way to New Hampshire to procure some twenty-five calibre bullets. Robert departed and Paul again observed the defendant in the car outside which was driven off when Robert reëntered it.

One Donna Monti testified she appeared at Robert's apartment about 2:30 P.M. or 3 P.M. on the afternoon of September 14, 1967 (after the robbery had failed), saw Balakin and the defendant drive up in the defendant's car, and witnessed Balakin come to the apartment for a short conversation, following which both the defendant and Balakin drove away.

Christopher Dussault testified that on November 7, 1967, the defendant and Balakin, traveling together in an automobile, stopped to talk to him and advised him to leave town. The defendant on this occasion said there was a warrant out for him and he was leaving town. A police officer who later that day arrested the defendant witnessed, but did not overhear, this conversation.

The defendant questions the sufficiency of this evidence, emphasizing that there is no showing that in the incident of September 12, 1967, the bag and the box were brought into the automobile by him rather than by Robert, or that he knew what they contained. He argues also that his actions at the September 5, 1967, meeting (which had to do with a bank robbery planned for the next day which was called off) did not adversely affect him since there is no inference that he was called upon to deny anything or that his unheard words were incriminating.

In our view, however, the testimony that the defendant on September 12 passed the bag and box to Robert permits the inference that he was aware at that time of the nature of their contents and that he had had them originally. The defendant has argued to us an alleged analogy between this situation and that in *Commonwealth* v. *Fancy,* 349 Mass. 196, where Fancy associated with persons who stole a quantity of liquor from a truck. The distinction between the cases rests on the fact that it might be specifically found in this case that the defendant actually supplied the guns employed in the robbery attempt.

The defendant likewise can be fairly said to have been incriminated as a result of the September 5 incident when, in response to a call for guns, he appeared in the company of Balakin. Viewing these two conferences together, a conspiracy could be shown wherein the declarations of one conspirator were admissible against all the others. *Commonwealth* v. *Chapman,* 345 Mass. 251, 255. See *Commonwealth* v. *Kiernan,* 348 Mass. 29, 55–56, cert. den. *Gordon* v. *Massachusetts,* 380 U. S. 913.

The defendant argues that the conversation of November 7, 1967, adds nothing. We tend to agree that it is of little probative value but we consider it of some possible weight in view of the other incriminating evidence. In sum, the evidence against the defendant meets the test that it could have been found that he must necessarily have had some knowledge of what was planned and intent to be a part of it. One does not transmit guns to others without

some purpose in mind, and his purpose is made quite clear from the transcript of evidence, which we have thoroughly reviewed. *Commonwealth* v. *Adams*, 127 Mass. 15. *Commonwealth* v. *DiStasio*, 297 Mass. 347, cert. den. 302 U. S. 683.

The defendant argues in addition that he could not be found to be an accessory to Paul Dussault, as he is charged, since he allegedly handed the guns to Robert. He relies in this contention on *United States* v. *Peoni*, 100 F. 2d 401 (2d Cir.). There the defendant sold counterfeit bills to one Regno, who in turn sold them to one Dorsey. The defendant was charged as accessory to Dorsey's possession. The court held that the defendant's part in any wrongdoing ended with his sale to Regno. The *Peoni* court, at page 402, said, "It will be observed that all these definitions [of accessory before the fact] have nothing whatever to do with the probability that the forbidden result would follow upon the accessory's conduct; and that they all demand that he in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." It suffices to say that Peoni had little concern with Dorsey's possession of the counterfeit bills but that the defendant Stout, if he supplied the guns, had a real concern that the robbery succeed as planned. There was no error in the refusal of the trial judge to direct a verdict of not guilty on the defendant's motion.

2. The defendant's allegation of error in denying him a new trial is based on what he claims to be newly discovered evidence and error occurring throughout the trial in the admission of evidence to which no objection was lodged or exception taken. Some of the alleged newly discovered evidence relates to a photograph taken from Paul Dussault's apartment window directed to a spot where it had been testified Robert and the defendant parked the car in which they were riding on September 12, 1967. The defendant states that this photograph demonstrates that Paul could not have seen him through his apartment window as he

testified. Additionally, the new evidence consists of certain affidavits given by others involved in the crime as well as statements of other witnesses tending to contradict certain evidence adduced against the defendant when he was tried. With respect to the second prong of his argument, the defendant seems to rely in tandem on the liberalization of G. L. c. 278, § 29, as amended through St. 1966, c. 301 (which permits the granting of a new trial whenever justice *may* not have been done), and *Commonwealth* v. *Freeman*, 352 Mass. 556. That case states at pages 563–564 that if an error in a trial creates a "substantial risk of a miscarriage of justice" it can be the ground for the ordering of a new trial by this court even though no exception was taken below. The defendant in a lucid and persuasive argument seeks to place upon us the duty of reversal for errors not excepted to below where the possibility of prejudice exists. We cannot so extend the effect of the statute or case law. Rather it is more rational to read it as continuing in force the rule that errors not excepted to in the trial court cannot, as of right, be made the basis of allowance of a motion for a new trial. *Commonwealth* v. *Dawn*, 302 Mass. 255, 263–264. *Commonwealth* v. *Martin*, 304 Mass. 320, 325. Such an interpretation provides sufficient leeway for the expanded test of the statute to function without creating the havoc that would ensue from making every error not excepted to a potential cause for a new trial. We view the statute as amended in 1966 as affording to the trial judge broader grounds for granting a new trial without substantially altering the nature of our review of his action. What the statute change has accomplished is to expand the scope of the trial judge's inquiry prior to his making his decision on the motion without varying our responsibilities on review under *Davis* v. *Boston Elev. Ry.* 235 Mass. 482, *Commonwealth* v. *Gallo*, 275 Mass. 320, 328, and *Bartley* v. *Phillips*, 317 Mass. 35, 42. Applying that concept to this case we cannot say that the judge could not "conscientiously, intelligently and honestly have reached the result he has reached." *Commonwealth* v. *Sacco*, 259 Mass. 128, 140. *Davis* v. *Boston Elev. Ry.* 235 Mass. 482,

502. *Commonwealth* v. *Heffernan,* 350 Mass. 48, 53, cert. den. 384 U. S. 960. In this case a number of the affiants were likely to be untrustworthy and the judge was in the position of exercising his discretion on the weight he would tender to their affidavits and to other material, including the photograph, which were before him on the motion. We cannot rule that he erred.

3. The defendant in an omnibus assignment claims that he was not given a fair trial and indulges in a series of complaints on the admission of evidence, the failure of his trial counsel to make proper objections or to take exceptions, and the actions of the trial judge in not adequately controlling the prosecutor or safeguarding the rights of the defendant prior to giving the case to the jury with an erroneous and prejudicial charge. The principal thrust of his argument is that the errors which took place were so numerous that under *Commonwealth* v. *Freeman,* 352 Mass. 556, there was created a "substantial risk of a miscarriage of justice." The law with respect to the necessity of the seasonable saving of exceptions is too well known to require a discussion. G. L. c. 278, § 33B, as amended through St. 1955, c. 352, § 1. We have referred to it on numerous occasions. *Commonwealth* v. *Gray,* 314 Mass. 96, 102. *Commonwealth* v. *Crowell,* 347 Mass. 771. *Commonwealth* v. *Kiernan,* 348 Mass. 29, 33. Order in the administration of criminal justice requires that if a defendant is aggrieved by what transpires during his trial he should follow the pattern prescribed for insuring that his grievances reach the reviewing court through the processes which amply provide that insurance. We cannot retry every criminal appeal on the basis of what might have been. Notwithstanding that truth, we have reviewed each single complaint lodged by the defendant and were we to treat them in extenso one by one we should be unable to conclude that individually or together they give rise to a cause for reversal. The defendant has asserted that he was denied effective assistance of counsel. The defendant was a constable engaged prior to his apprehension in serving process for many attorneys in his area. More than most he

Commonwealth *v*. Stout.

was in a position to decide whom to retain and on whom he wished to rely for his defence. He chose his counsel freely and now that he complains of him we can say only that we have examined the sizeable number of cases in other jurisdictions cited by the defendant dealing with ineffective counsel, have found them all concerned with fact situations quite diverse from this, and have concluded that the defendant's constitutional right to fundamental fairness was not violated. See *United States* v. *Reincke*, 383 F. 2d 129, 133 (2d Cir.). In reviewing a transcript it is always possible to visualize how counsel might have bettered their approach to the case on trial but that in itself does not provide a reason for upsetting a verdict where there is no transgression of the defendant's basic rights.

4. Finally, the defendant claims that the court erred in denying his motion for a mistrial which came after the prosecutor in his final argument suggested that the Commonwealth's case was so strong against the defendant that he and his counsel "had to sit down and talk it over and they had to voluntarily give up this constitutional right not to testify because the evidence was so compelling at that point against Donald Stout . . . ." This tactic does not commend itself and should not be engaged in by the prosecution. The judge promptly instructed the jury that they were to draw no inferences with respect to the defendant's guilt from his exercise of his right to take the stand or his failure to exercise it and, further, that he had "a perfect right to consult with his lawyer and you can draw no inference from that whatsoever, if he does take the stand after conferring with his lawyer." He gave similar instructions again to the jury in his charge. Under *Commonwealth* v. *Devlin*, 335 Mass. 555, 568–569, there was no error.

*Judgment affirmed.*