COMMONWEALTH vs. RALPH A. PISA.

Middlesex. May 5, 1981. — August 13, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Presumptions and burden of proof, Instructions to jury, New trial, Appeal.

A defendant charged with murder was not prejudiced by the judge's use of the word "presumption" in his instructions on malice where the sole issue contested by the defendant was the identity of the murderer. [363-364]

On appeal from the denial of a motion for a new trial, the defendant was precluded from raising issues not raised at trial or in appellate review after trial in the absence of a determination by a single justice that the issues presented new and substantial questions which ought to be determined by the full court. [364-367]

INDICTMENT found and returned in the Superior Court on March 10, 1970.

A motion for a new trial filed on June 20, 1980, was heard by *Paquet,* J.

An application filed in the Supreme Judicial Court for the county of Suffolk for leave to appeal the denial of the motion was allowed by *Liacos,* J.

*John Cavicchi* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.  A single justice of this court allowed the defendant to appeal the correctness of the order of the Superior Court judge denying the defendant's latest[1] motion for a new trial.  G. L. c. 278, § 33E.  In this motion, the defendant Ralph A. Pisa challenged the trial judge's instructions to

---

[1] See *Commonwealth* v. *Pisa,* 372 Mass. 590, cert. denied, 434 U.S. 869 (1977); *Pisa* v. *Commonwealth,* 378 Mass. 724 (1979).

the jury, claiming that the use of the word "presumption" in the malice instructions automatically required reversal of his criminal conviction. See *Sandstrom* v. *Montana*, 442 U.S. 510 (1979); *DeJoinville* v. *Commonwealth*, 381 Mass. 246 (1980); *Commonwealth* v. *Callahan*, 380 Mass. 821 (1980). Since no objection to the charge was lodged at trial, the question is whether the instructions read as a whole created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Roberts*, 37⁴ Mass. 116, 122-123 (1979). For essentially the same reasons as advanced in *Commonwealth* v. *Lee*, 383 Mass. 507, 512 (1981), we conclude that the over-all impact of the instructions did not create a risk of miscarriage of justice. Therefore, we affirm the order denying Pisa's latest motion for new trial.

The defendant asserts that the instructions had the effect of shifting the burden of proof to him on the element of malice. *Commonwealth* v. *Callahan*, 380 Mass. 821 (1980). *Sandstrom* v. *Montana*, 442 U.S. 510 (1979). See *Hankerson* v. *North Carolina*, 432 U.S. 233 (1977); *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975); *Ivan V.* v. *City of New York*, 407 U.S. 203 (1972); *In re Winship*, 397 U.S. 358 (1970). See also *DeJoinville* v. *Commonwealth*, 381 Mass. 246 (1980); *Commonwealth* v. *Smith*, 381 Mass. 141 (1980); *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976). However, Pisa's case "was tried and argued by both parties on the theory that a murder had been committed. The issue contested by the defendant was solely that of the identity of the murderer. In such circumstances, the failure to object to the charge as to malice cannot be attributed to inadvertence or lack of knowledge of evolving constitutional doctrine. Rather, the failure to object reflects a conscious choice of trial strategy by defense counsel." *Commonwealth* v. *Lee*, 383 Mass. 507, 512 (1981).

The record reveals "no issue of justification, mitigation, or lack of intent on the part of the perpetrator." *Id.* at 513. Compare *Sandstrom* v. *Montana, supra* at 521 (intent was "the lone element of the offense at issue in Sandstrom's trial"). We conclude that the use of the word "presumption"

in the malice instructions had no bearing on Pisa's guilt, and
that the instructions did not create a danger of grave preju-
dice or a substantial likelihood of a miscarriage of justice.[2]
Pisa's claim, therefore, must fail. See *Commonwealth* v.
*Hooks*, 375 Mass. 284, 297 (1978). Cf. *Commonwealth* v.
*Wood*, 380 Mass. 545, 547-550 (1980).

In this court Pisa also claims error in the instructions on ali-
bi, on reasonable doubt, and in those instructions in which
the judge informed the jury of the possibility of corrective ac-
tion by an appellate court. He raised none of these issues
below. Pisa may not argue these issues on appeal unless he
can point to a determination by a single justice that these
issues present "new and substantial question[s] which ought
to be determined by the full court." G. L. c. 278, § 33E.[3]
There is no such determination in this case with respect to
these issues. Nevertheless, we comment briefly on Pisa's
piecemeal attacks on his conviction.

Pursuant to G. L. c. 278, § 33E, after the rescript in a
particular case has issued, no appeal may be taken from the
denial of a motion for a new trial "unless the appeal is al-
lowed by a single justice of the supreme judicial court on the
ground that it presents a new and substantial question
which ought to be determined by the full court." That lan-
guage was added in 1939 by the Legislature, see St. 1939,
c. 341, which was responding in part to criticism of repeat-
ed appeals of criminal convictions contained in the Third

---

[2] "Error in a charge is determined by reading the charge as a whole,
and not by scrutinizing bits and pieces removed from their context." *Com-
monwealth* v. *Cundriff*, 382 Mass. 137, 153 (1980), and cases cited. The
charge read as a whole clearly places the burden of proof on the Com-
monwealth. The judge explicitly instructed the jury that the defendant
had "no burden of proving any facts whatsoever," that "[t]he Common-
wealth has the burden of proving to you the guilt of this defendant beyond
a reasonable doubt in order that he may be convicted of any crime charged
in this indictment," and that the Commonwealth must convince the jury
"that the defendant, and no one else, committed the crime." Other lan-
guage in the charge permits only an inference that the burden of proof is
on the Commonwealth.

[3] We need not decide what scope of review, if any, is available in cases
where a single justice denies leave to appeal.

Report of the Judicial Council, Pub. Doc. No. 144 (1927).[4] Although the Judicial Council's report was made in 1927, § 33E was not amended to include its present last sentence until 1939. At that time, the Legislature also added language which transferred to the full court "the whole case for its consideration of the law and the evidence." See St. 1939, c. 341.

We have exercised our broad power under § 33E with restraint. See *Commonwealth* v. *Hooks*, 375 Mass. 284, 298 (1978). Nevertheless, we have used it to ensure that the result in a given case is "consonant with justice." *Commonwealth* v. *Seit*, 373 Mass. 83, 94 (1977), quoting from *Commonwealth* v. *Baker*, 346 Mass. 107, 109 (1963). See, e.g., *Commonwealth* v. *Gould*, 380 Mass. 672 (1980); *Commonwealth* v. *Cole*, 380 Mass. 30 (1980). Pisa himself has been the beneficiary of our exercise of this power. See *Commonwealth* v. *Pisa*, 372 Mass. 590, 597-598, cert. denied, 434 U.S. 869 (1977).

The statute requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and avail-

---

[4] The council stated it was concerned with the six-year delay between the convictions and executions in the *Sacco-Vanzetti* case, *Commonwealth* v. *Sacco*, 255 Mass. 369 (1926). The report of the council stated, "Under our present practice it is possible for zealous counsel, after a verdict of guilty has been rendered in a murder case, to delay the execution of the sentence unduly by saving exceptions at hearings on motions for a new trial and then taking the case, perhaps repeatedly, to the Supreme Judicial Court on appeal. There should be one appeal as of right in a capital case, but there need be no more. One convicted of murder must be given an opportunity to submit the record of the trial to the court of last resort and he is entitled to have that record scrutinized with the greatest care. If as a result of such scrutiny the court finds no error in the conduct of the trial, it would seem that the defendant should not have an unqualified right thereafter to appeal from the decision on every eleventh hour application for a new trial. Such applications rarely have any merit whatever and seldom present any substantial question. In our opinion there should be no right of appeal at this juncture unless the appeal is allowed by a justice of the Supreme Judicial Court as presenting a new and substantial question which ought to be passed upon by the full court." Third Report of the Judicial Council, Pub. Doc. No. 144, at 39-40 (1927).

able at the time of trial or appeal.[5] *Commonwealth* v. *Chasson,* 383 Mass. 183, 188-189 (1981). *DeJoinville* v. *Commonwealth,* 381 Mass. 246 (1980). Issues not raised at trial or pursued in available appellate proceedings are waived. *Commonwealth* v. *Harrington,* 379 Mass. 446, 449 (1980). *Gibson* v. *Commonwealth,* 377 Mass. 539, 549 (1979). *Commonwealth* v. *Grace,* 376 Mass. 499, 500 (1978).

Underlying the requirement that claims be raised at the earliest possible time is a belief that such a practice will aid in the proper allocation of limited legal and judicial resources. Any other practice would unfairly consume public resources without any corresponding benefit to the administration of justice. Common sense counsels against such a result.

Pisa's attempt to raise claims belatedly in a motion for new trial also conflicts with our "unbroken practice" of not allowing a motion for new trial to be used as "a vehicle to compel a trial judge to review and reconsider questions of law . . . which could have been raised at trial and in appellate review after trial but which were not so raised." *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973). "Order in the administration of criminal justice requires that if a defendant is aggrieved by what transpires during his trial," he must assert a timely objection or claim of error. *Commonwealth* v. *Stout,* 356 Mass. 237, 243 (1969). We do not believe that it is either unreasonable or unduly burdensome to require a defendant to "assert all known constitutional claims [and other claims of error] in a single proceeding." *Murch* v. *Mottram,* 409 U.S. 41, 45 (1972). See note 4, *supra.* "We cannot [and will not] retry every criminal appeal on the basis of what might have been." *Commonwealth* v. *Stout, supra.*

---

[5] In this respect, G. L. c. 278, § 33E, is similar to Mass. R. Crim. P. 30 (c) (2), 378 Mass. 901 (1979). The Reporters' Notes to the rule state that it "is intended to establish finality of convictions," and also to eliminate "'piecemeal litigation . . . whose only purpose is to vex, harass, or delay.' *Sanders* v. *United States,* 373 U.S. 1, 18 (1963)." Reporters' Notes to Mass. R. Crim. P. 30 (c) (2), Mass. Ann. Laws, Rules of Criminal Procedure at 484 (1979). See *Commonwealth* v. *Grace,* 381 Mass. 753, 759-760 (1980).

Finally, the requirement that all claims of error be made prompty enhances public confidence in the administration of criminal justice. That system requires "that there be a visible end to the litigable aspect of the criminal process. Finality in the criminal law is an end which must always be kept in plain view." *Mackey* v. *United States*, 401 U.S. 667, 690 (1971) (Harlan, J., concurring), and cases cited. "There must be a reasonable moment for a judgment to become final and a time beyond which further challenges must be barred." *Reddick* v. *Commonwealth*, 381 Mass. 398, 403 (1980). See generally Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142 (1970); Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L. Rev. 441 (1963). The legal theories, constitutional or otherwise, underlying Pisa's three other claims were available at the time of Pisa's first or second appeal; therefore, these issues may not be raised on this, his third appeal.[6]

*Judgment affirmed.*

---

[6] Pisa's trial was completed on September 25, 1970. His first appeal was argued on June 8, 1976, after our decisions in *Commonwealth* v. *Walker*, 370 Mass. 548, 574-575, cert. denied, 429 U.S. 943 (1976) (disapproving the practice of informing the jury of the availability of appellate review), and *Commonwealth* v. *McLeod*, 367 Mass. 500 (1975) (suggesting a change in the instruction on alibi). The second appeal was argued after the decision in *Bumpus* v. *Gunter*, 452 F. Supp. 1060 (D. Mass. 1978) (criticizing certain language on reasonable doubt from *Commonwealth* v. *Madeiros*, 255 Mass. 304 [1926]), aff'd, 635 F.2d 907 (1st Cir. 1980). Therefore, any objections to these instructions should have been raised in one of the prior appeals. Pisa's brief does not disclose any valid reason for his failure to raise those issues in the earlier proceedings, and, hence, they need not be considered by us. However, we think it appropriate to observe that the failure of both trial and appellate counsel to raise these issues earlier "suggest[s] that [they were] not thought to be critical." *Commonwealth* v. *Grace*, 381 Mass. 753, 760 (1980).