Lewis H. DICKERSON, Petitioner,

v.

Arthur LATESSA, Respondent.

Civ. A. No. 87–0901–Y.

United States District Court,
D. Massachusetts.

May 31, 1988.

---

John P. Osler, Committee for Public Counsel Services, Barry Barkow, Massachusetts Correctional Legal Services, Boston, Mass., for petitioner.

Linda Katz, Asst. Atty. Gen., Boston, Mass., for respondent.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This matter is before the Court on the petition of Lewis H. Dickerson ("Dickerson") for habeas corpus. Dickerson asserts that Massachusetts denies equal protection to persons convicted of first degree murder by permitting a single justice to determine whether appellate review of their post-conviction claims is warranted, whereas others receive full bench review as of right.

### I. *Background*

Dickerson was convicted of first degree murder in 1975, a conviction upheld by the Supreme Judicial Court in 1977. *Commonwealth v. Dickerson*, 372 Mass. 783, 364 N.E.2d 1052 (1977). In 1980 Dickerson sought to challenge his conviction by a motion for new trial filed in the Suffolk County Superior Court. His motion was denied without a hearing. A single justice of the Supreme Judicial Court, acting pursuant to Mass.Gen.Laws ch. 278, sec. 33E, denied Dickerson leave to appeal on the ground that such appeal would not present a new and substantial question.

Dickerson next sought habeas corpus relief, challenging as a denial of due process and equal protection the "gate-keeper" provision of Mass.Gen.Laws ch. 278, sec. 33E —i.e., the provision that a single justice of the Supreme Judicial Court shall alone determine, after affirmance of a first degree murder conviction by the full bench of the Supreme Judicial Court, whether to allow further appellate consideration of subsequent post-conviction claims. Denied relief in the District Court, Dickerson appealed,

but the Court of Appeals for the First Circuit upheld the dismissal of his petition on the ground that he had failed to exhaust his state remedies. *Dickerson v. Walsh*, 750 F.2d 150 (1st Cir.1984). Back in the courts of the Commonwealth, Dickerson commenced a declaratory judgment action against the Massachusetts Attorney General seeking to have Mass.Gen.Laws ch. 278, sec. 33E declared unconstitutional. In a short, straightforward opinion, the Supreme Judicial Court held Mass.Gen.Laws ch. 278, sec. 33E to the minimalist "rational basis" test, concluded that the statute met that test, and declared it constitutional. *Dickerson v. Attorney General*, 396 Mass. 740, 488 N.E.2d 757 (1986).

His state remedies exhausted, Dickerson returns to this Court and again presents his equal protection challenge to Mass.Gen. Laws ch. 278, sec. 33E. Upon reflection, this Court agrees with the Supreme Judicial Court of Massachusetts that, as applied to the particular facts of this case, Mass. Gen.Laws ch. 278, sec. 33E has not worked to deprive Dickerson of the equal protection of the laws. This Court, however, is not nearly as confident as the Supreme Judicial Court that the "rational basis" test is the appropriate standard to invoke in access to appellate review cases. Indeed, so counterintuitive is the Massachusetts statutory scheme—at least with respect to issues that the defendant could not have possibly raised in his first, plenary appeal —that this Court reaches a decision in accord with that of the Supreme Judicial Court only after considering whether Dickerson, in fact, presented any "new and substantial [federal constitutional] questions" to the single justice.

### II. *The Massachusetts Statutory Scheme*

Dickerson argues that Massachusetts' treatment of post-conviction relief actions creates two classes of convicted persons that are treated differently in violation of the Fourteenth Amendment's Equal Protection Clause. Under Mass.Gen.Laws, ch. 278, sec. 33E, first degree murder cases are subject to special treatment on review. In the first instance, that treatment is high-

ly favorable to defendants. Persons convicted of first degree murder can appeal their convictions directly to the Supreme Judicial Court and there receive plenary review, i.e., broad review of all aspects of the case whether or not specifically raised on appeal. All other convicted persons can appeal only to the Massachusetts Appeals Court, with Supreme Judicial Court review being granted rarely and in limited circumstances. *See* Mass.R.App.P. 11, 27.1 (1987). Moreover, for these defendants, review by either Massachusetts appellate court is limited to claims of legal error which were preserved by objection at trial or which present a substantial risk of a miscarriage of justice. *Commonwealth v. Ely,* 388 Mass. 69, 77–78, 444 N.E.2d 1276 (1983); *Commonwealth v. Freeman,* 352 Mass. 556, 564, 227 N.E.2d 3 (1967).

However, after these appeals are exhausted, the statutory scheme is considerably less advantageous to those convicted of first degree murder if they subsequently try to pursue post-conviction claims. Section 33E prohibits subsequent appellate review of a first degree murder conviction absent determination by a single justice that the appeal presents "a new[1] and substantial question which ought to be determined by the full court." Mass.Gen.Laws ch. 278, sec. 33E. The decision of the sin-

gle justice to deny leave to appeal is itself unappealable. *Leaster v. Commonwealth,* 385 Mass. 547, 548, 432 N.E.2d 708 (1982). In contrast, Mass.R.Crim.P. 30(c)(8) affords all those convicted defendants not subject to Section 33E a subsequent appeal on the merits as of right to the Appeals Court. Under certain circumstances, such defendants may also appeal directly, or after the Appeals Court's ruling, to the Supreme Judicial Court.[2] Dickerson asserts that this less favorable treatment of first degree murder defendants with respect to appeals subsequent to the first, plenary review violates equal protection.

### III. *The Equal Protection Standard in the Access-to-Appeal Context*

Over the past several decades, the Supreme Court has ruled unconstitutional as violative of the Equal Protection Clause numerous practices that limited the access of defendants to the appeals process. The typical case involved a requirement that an indigent criminal appellant pay for a transcript or a filing fee necessary for an appeal to a reviewing court. *See, e.g., Mayer v. Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (per curiam) (1971); *Williams v. Oklahoma City,* 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); *Gardner v.*

---

1. The Supreme Judicial Court has interpreted the term "new" quite narrowly. Precluded from review are claims that were available at the time of trial or initial review, regardless of whether they were actually raised. *Commonwealth v. Ambers,* 397 Mass. 705, 707, 493 N.E.2d 837 (1986). In *Ambers,* the Supreme Judicial Court refused to review a challenge to an allegedly illegal sentence. *Id.* at 707–10, 493 N.E.2d 837. In all cases not subject to Section 33E, the previous availability of a post-conviction claim merely determines the standard (substantial risk of miscarriage of justice), not the availability, of appellate review. *See, e.g., Commonwealth v. Grace,* 381 Mass. 753, 756–57, 412 N.E.2d 354 (1980).

2. For example, when such a defendant's appeal as of right is entered in the Appeals Court, she may, as of right, petition for direct review in the Supreme Judicial Court. Mass.R.App.P. 11. Such petitions cannot be denied without review by at least six of the seven justices. Mass.Gen.Laws ch. 211A, sec. 10 (direct review allowed with approval of any two of the seven justices).

If such a defendant loses before the Appeals Court, she may, as of right, petition for further appellate review in the Supreme Judicial Court. Mass.R.App.P. 27.1. Such petitions cannot be denied without review by at least five of the seven justices. Mass.Gen.Laws ch. 211A, sec. 11 (further review allowed with approval of three of the seven justices). In addition, two justices of the Supreme Judicial Court may order *sua sponte* direct review in those cases where the defendants do not exercise their right to apply for direct review. Direct review may also be ordered by a majority vote of the Appeals Court or its panel if such review is in the public interest. Mass.Gen.Laws ch. 211A, sec. 10.

Finally, defendants dissatisfied with the result of the Appeals Court panel review may petition for reconsideration. Mass.Gen.Laws ch. 211A, sec. 11; Mass.R.App.P. 27. In contrast, the decision of a single justice to prevent appellate review in the case of a subsequent appeal by a defendant convicted of first degree murder is not subject to review by any court. *Leaster v. Commonwealth,* 385 Mass. 547, 548, 432 N.E.2d 708 (1982).

*California,* 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969); *Long v. District Court of Iowa,* 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966) (per curiam); *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); *Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); *Lane v. Brown,* 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); *Smith v. Bennett,* 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed. 2d 39 (1961); *Burns v. Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); *Eskridge v. Washington Prison Board,* 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958) (per curiam); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).[3]

Although the Supreme Court has used the language of minimum rationality review in the two access-to-appeal cases cited by the Supreme Judicial Court in *Dickerson v. Attorney General,* 396 Mass. at 743, 488 N.E.2d 757, *see Estelle v. Dorrough,* 420 U.S. 534, 538, 95 S.Ct. 1173, 1176, 43 L.Ed.2d 377 (1975) (per curiam) (stating that "this Court in dealing with equal protection challenges to state regulation of the right of appeal in criminal cases ... applie[s] the traditional rational-basis test"); *Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966) (holding that "the Equal Protection Clause does require that, in defining a class subject to legislation, the distinctions that are drawn have 'some relevance to the purpose for which the classification is made' ") (citations omitted), the Supreme Court, in fact, appears to afford a scrutiny stricter than minimum rationality. For example, in the indigent access cases the government certainly has a legitimate interest in reducing

the cost of operating its judicial system, *see Ortwein v. Schwab,* 410 U.S. 656, 660, 93 S.Ct. 1172, 1174, 35 L.Ed.2d 572 (1973); *United States v. Kras,* 409 U.S. 434, 449, 93 S.Ct. 631, 640, 34 L.Ed.2d 626 (1973), an interest that is rationally served by requiring defendants to pay for transcripts or filing fees. Yet the Supreme Court has uniformly overturned any law that restricts an indigent's ability to appeal.

This greater-than-minimum rationality standard is not explained by concern for discrimination against the indigent. Indeed, the Supreme Court has specifically declined to hold that indigents are a suspect class requiring strict scrutiny. *See Maher v. Roe,* 432 U.S. 464, 470–71, 97 S.Ct. 2376, 2380–81, 53 L.Ed.2d 484 (1977); *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 29, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973).

Whether the standard is minimum rationality or a somewhat heightened scrutiny, the Massachusetts statute is subject to question because a wholesale refusal to entertain the subsequent post-conviction appeals of those convicted of first degree murder is not even minimally rational, at least with respect to matters that could not possibly have been raised during the first, plenary appeal.

Admittedly, some governmental goals are furthered by this statute which, as the Commonwealth argues, conserves judicial resources, encourages claims to be raised at the earliest possible opportunity,[4] and provides finality in criminal litigation. *See Commonwealth v. Pisa,* 384 Mass. 362, 366–67, 425 N.E.2d 290 (1981). In addition, the Commonwealth argues that the plenary

---

3. An exception to this line of cases is *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975) (per curiam) in which the Supreme Court denied an equal protection challenge to a state statute restricting access to appeal. In *Dorrough,* the respondent attacked a Texas law that provides for the automatic dismissal of an appeal by a felony suspect who escapes from custody pending the appeal and permits the appeal to be reinstated if the suspect surrenders within ten days of the escape. 420 U.S. at 535, 95 S.Ct. at 1174. Noting that "[d]isposition by dismissal of pending appeals of escaped prisoners is a longstanding and established principle of American law," *id.* at 537, 95

S.Ct. at 1175 (citation omitted), the Supreme Court ruled that the statute did not offend the Equal Protection Clause because it discourages the felony of escape, encourages voluntary surrender, and promotes the efficient, dignified operations of the Texas Court of Criminal Appeals. *Id.* This statute was therefore "sufficiently rational." *Id.* at 541, 95 S.Ct. at 1177.

4. For example, a motion for a new trial raised before the Supreme Judicial Court decides a direct appeal will be reviewed as of right by that court along with the other claims in the appeal. *See* Mass.Gen.Laws ch. 278, sec. 33E.

review provided by the statutory scheme makes reasonable the less thorough post-conviction review afforded first degree murder convicts because every facet of such cases will have already been subjected to full, plenary review. However, numerous post-conviction claims may be raised that could not possibly have been considered by the Supreme Judicial Court in its plenary review, *e.g.*, claims based on new evidence, on failure to disclose exculpatory evidence, on recantation by prosecution witnesses, and on ineffective assistance of counsel based on conflict of interest to name but a few. No rational argument has been advanced which supports treating these issues less exactingly for those convicted of first degree murder. Indeed, if anything, the more serious nature of their crimes and punishments should warrant more careful review.

What may save the statute, however, is the so-called "gatekeeper" provision which allows a single justice the nonreviewable authority to determine whether subsequent post-conviction appeals by those convicted of first degree murder present any "new and substantial question" and, if so, to permit appeal to the full bench of the Massachusetts Supreme Judicial Court. If this provision, as applied to Dickerson, provided the practical, functional equivalent of the subsequent post-conviction appeal process granted to other Massachusetts convicts, his equal protection challenge must fail.

The provision raises essentially three issues for constitutional consideration. First, what of the strict construction Massachusetts applies to the word "new"? Indeed, it appears that only those issues which could not possibly have been raised at the time of the first, plenary appeal qualify as "new" under Mass.Gen.Laws ch. 278, sec. 33E. *See supra* note 1. This strict construction does not offend the Equal Protection Clause, however, because it is only as to these genuinely "new" issues that the anomalous Massachusetts procedure may be challenged as violative of equal protection. As to all other issues, the Commonwealth's arguments concerning the conservation of judicial resources and the incentive to bring forward all appellate issues during the first, plenary appeal provide an ample and persuasive rationalization for the Massachusetts procedure.

Second, what of the requirement that in post-conviction appeals by those convicted of first degree murder subsequent to the first, plenary appeal, the defendant must advance a "substantial" question—a requirement not imposed on any other class of defendant? At first blush, this appears to be a totally irrational distinction. In practical application by the Supreme Judicial Court of Massachusetts, however, the criterion required for an issue to pose a "substantial" question appears to be interpreted by the various justices as met whenever the appellate issue sought to be raised is other than frivolous. The Massachusetts Reports are replete with cases where a single justice has granted leave to appeal—apparently finding the defendant to have raised a new and substantial question—and where the Supreme Judicial Court then affirms the conviction. The frequency with which such Superior Court verdicts are affirmed by the full bench strongly suggests to this Court that the single justices are, properly, being liberal in finding issues raised both new and non-frivolous. *See, e.g., Commonwealth v. Johnson*, 399 Mass. 14, 502 N.E.2d 506 (1987) (alleged improper jury instructions); *Commonwealth v. Florentino*, 396 Mass. 689, 488 N.E.2d 403 (1986) (alleged ineffective assistance of counsel); *Commonwealth v. Leaster*, 395 Mass. 96, 479 N.E.2d 124 (1985) (supposed newly discovered evidence); *Commonwealth v. Turner*, 393 Mass. 685, 473 N.E. 2d 679 (1985) (alleged denial of Sixth Amendment right to confrontation); *Commonwealth v. Pisa*, 384 Mass. 362, 425 N.E.2d 290 (1981) (alleged improper jury instructions).

The Court's conviction in this respect is further enhanced by the care taken by the single justices to ensure that close questions are heard by the full bench in cases like *Commonwealth v. Ambers*, 397 Mass. 705, 493 N.E.2d 837 (1986) where the single justice, rather than decide it himself, reserved for consideration of the entire court

in an apparent close case the question whether the defendant had succeeded in raising a "new" question in one of several issues presented in his appeal. The full Supreme Judicial Court ruled that no new question was raised and refused to reach the merits on that issue. If the single justice "gatekeepers" are forwarding for full review all nonfrivolous issues, then the gatekeeper provision of Section 33E is, as applied, the functional equivalent of the appellate remedy afforded other litigants seeking subsequent post-conviction review, and the equal protection challenge must fail in light of the statute's actual application.

Third, what of the fact that the decision of the single justice is non-reviewable? The propriety of this aspect of the statute is likewise bound up with the interpretation to be given the phrase "substantial question." If only frivolous appeals are barred by the single justice, no equal protection challenge can succeed because a state has a perfect right to discourage such a waste of judicial resources.

■ Accordingly, because it appears Mass.Gen.Laws ch. 278, sec. 33E is capable of rational interpretation in a manner which comports with the requirements of the Equal Protection Clause, and because the Supreme Judicial Court appears to be so interpreting the statute, it only remains for this Court to consider whether, as applied to the substantial federal[5] issues sought to be raised by Dickerson, the single justice has accorded him the equal protection of the laws.

IV. *Dickerson's Claims*

■ This Court is satisfied that Dickerson has, in the circumstances of this case, received the full measure of his constitutional rights under the Equal Protection Clause. Dickerson raises three substantive issues. The first and third are not "new" as they could have been raised on his first, plenary appeal. Moreover, the second and third issues present questions of state law alone and the resolution of these questions by the single justice against Dickerson is conclusive evidence that they are frivolous under the law of the Commonwealth.

Dickerson first challenges a portion of the jury charge that, he claims, elevated an inference from circumstantial evidence to the status of a rebuttable presumption in violation of the Constitution. Dickerson further asserts that the constitutional theory upon which he relies was not set forth until 1979, when the Supreme Court decided *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed. 2d 777 (1979). The heart of Dickerson's contention appears to be that "[a] presumption which, although not conclusive, had the effect of shifting the burden of persuasion to the defendant," is unconstitutional. *Sandstrom*, 442 U.S. at 524, 99 S.Ct. at 2459. This feature of the *Sandstrom* decision, however, was hardly novel. The Supreme Court, in *Mullaney v. Wilbur*, 421 U.S. 684, 684–85, 688, 701, 704, 95 S.Ct. 1881, 1882–83, 1884, 1890, 1892, 44 L.Ed.2d 508 (1975), had earlier ruled that a Maine statute that allowed the prosecution to rest on a presumption of implied malice aforethought, and that required a defendant charged with murder to prove that he had acted in the heat of passion or sudden provocation in order to reduce the homicide to manslaughter, violated the Due Process Clause. *See also Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977) (explaining the significance of *Mullaney*).[6] Given that the con-

---

5. The resolution by the single justice of issues of purely state law—for or against Dickerson—presents no constitutional question under the Equal Protection Clause. This Court is not empowered to review decisions of state tribunals as to state substantive law questions. *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977). The Equal Protection challenge Dickerson makes here cannot

change this principle. If, under Mass.Gen.Laws ch. 278, sec. 33E, a single justice acts to foreclose an appeal on state law grounds, there can be no better evidence that the issue is, in fact, frivolous.

6. This Court acknowledges that the *Patterson* decision itself was handed down only three days before Dickerson's appeal to the Supreme Judicial court was decided against him and that,

stitutional basis for this aspect of his claim was clearly delineated more than two years before the Supreme Judicial Court determined his appeal,[7] this ground could have been raised therein. It is thus not a "new" issue which might require further Equal Protection analysis. Second, Dickerson asserts that the Superior Court Judge who ruled on his post-conviction motions erred in denying his motion without a hearing and without reviewing a transcript of the jury instruction. Third, he argues that the Motion Judge erred in ruling as matter of law that a proffered expert linguist could not testify as to the communicative effect of the court's language in its discourse on the evidence. *See* Memorandum in Support of Petitioner's Motion for Summary Judgment at 11 n. 7. These are purely matters of the law of the Commonwealth. The Motion Judge denied both of these claims, noting that Dickerson had already received plenary review under Mass.Gen.Laws ch. 278, sec. 33E and that the third claim, challenging the language used in the jury charge and proffering expert testimony thereon, could have been raised on appeal in 1977.

In the absence of a due process claim—and none is here raised—the manner of disposing of motions under Mass.Gen.Laws ch. 278, sec. 33E is solely and entirely a matter for the judicial authorities of the Commonwealth. So too is the decision whether or not to receive certain evidence in aid of such a motion. This Court does not sit to review such determinations.

For all of the reasons expressed above, Dickerson's petition for habeas corpus must be DENIED.

---

therefore, any new law made by *Patterson* in all fairness was not realistically available to Dickerson on that appeal.

7. Indeed, Dickerson seems to acknowledge that *Mullaney* provided the constitutional underpinnings of his would-be attack. In his Memorandum of Law in Support of Petition for Leave to

Appeal Denial of Post Conviction Motion (filed in *Commonwealth v. Dickerson,* SJC No. 81–88 Civil) at 19, Dickerson asserts that "[a]n instruction which places a burden of persuasion on the defendant to rebut an inculpatory inference deprives him of due process of law," citing both *Sandstrom* and *Mullaney.*