COMMONWEALTH *vs.* MALCOLM F. HICKS & another.[1]

Suffolk. November 3, 1969. — December 2, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Homicide. Evidence*, On cross-examination, On voir dire, Judicial discretion.

At the trial of an indictment against two defendants for murder in which
the judge charged the jury on murder and on voluntary manslaughter,
evidence that while the defendants were together one of them threw the
victim to the ground and one of them kicked him with such force as to
cause death warranted a finding of the malice aforethought necessary
for the defendants' conviction of murder in the second degree and a
rejection of their contention that the killing constituted manslaughter
only. [444–445]

At the trial of an indictment for murder, there was no error in the judge's
refusal to charge the jury on the subject of involuntary manslaughter
where the only evidence of the manner in which the victim died showed
one or more intentional, forceful and deliberate kicks to his stomach
as he was lying on his back. [445]

At the trial of an indictment against two defendants for murder, it was
within the judge's discretion to allow the prosecutor, at a voir dire
respecting the legality of a defendant's arrest and subsequent interro-
gation and exhibition to witnesses, to cross-examine him as to his ac-
tivities shortly before the murder and his arrest in order to ascertain
the reliability of his recollection of the events at and after his arrest;

_____
[1] Robert J. Hubbard.

even if it was error to allow such cross-examination, there was no prejudice to either defendant since no statement then made was introduced before the jury. [446]

INDICTMENT found and returned in the Superior Court on September 14, 1967.

The case was tried before *Collins,* J.

*Reuben Goodman* for the defendants.

*James E. Foley,* Assistant District Attorney, for the Commonwealth.

KIRK, J. The defendants Hicks and Hubbard were charged in a single indictment with the murder of Alfonse Vadeikis. After a trial subject to G. L. c. 278, §§ 33A–33G, the jury returned a verdict of guilty of murder in the second degree as to each defendant. The case is before this court on appeals accompanied by a summary of the record, a transcript of the testimony, the exhibits, and assignments of error.

We summarize the evidence. At some time after 11:40 P.M. on August 28, 1967, and before 12:05 A.M. on August 29, Alfonse Vadeikis was found lying between two parked automobiles on West Broadway in South Boston, approximately opposite the South Boston Cafe. The police took him to the Boston City Hospital, where he was pronounced dead at approximately 1:25 P.M. on August 29, 1967.

A witness who lived at 203 West Broadway testified that as he was walking home he heard loud voices. When he looked up the street he saw three men and heard them "hollering at each other," and saw one of the men throw another down between two parked cars. He observed one of the men throw something and heard the smash of a window. He then saw the two men, whom he identified in court as the defendants Hicks and Hubbard, cross the street and enter the South Boston Cafe. A woman who lived in the house in front of which Vadeikis was found testified that she heard loud voices and the breaking of glass. She looked out the window and saw a man lying on his back in the gutter, and two men standing over him. She saw one of the two men bring his foot "right down on top" of the prostrate

man's stomach, and say, "Now you will stay away from the car." The two men then crossed the street and entered the South Boston Cafe.

In addition, there was testimony that on August 28, 1967, Vadeikis and the defendants had been customers in the South Boston Cafe, but that Vadeikis did not know the defendants and did not speak with either of them. Vadeikis left the barroom at approximately 10 P.M. and the defendants an hour later. Vadeikis' automobile was parked across the street, and the defendant Hicks' car was parked about twenty feet behind it. Both were station wagons. Hicks' car was light blue and Vadeikis' light green, but Vadeikis' car looked bluish under the lights. It was agreed that Vadeikis was nearsighted.

Dr. Richard Ford, the medical examiner who performed the autopsy on Vadeikis, testified that death was due to the tearing of the bowel attachment and bleeding in the belly cavity, caused by "blunt impact to the belly wall, with sufficient force to drive the muscles in and shove the belly so far that its attachment is stretched and torn." He further testified that the injuries were consistent with impact from a shod foot, that there must have been considerable force, and that there was in his opinion more than one impact.

1. We treat the case as a "capital case." G. L. c. 278, § 33E. *Commonwealth* v. *Baker*, 346 Mass. 107, 109. The judge charged the jury on murder and on manslaughter. The defendants assign as error the refusal of the judge to reduce the crime charged from murder to manslaughter. We regard the motion as one for a directed verdict of not guilty of murder. If there was evidence which warranted the verdict of guilty of murder in the second degree there was no error in denying the motion. "Murder in the second degree is unlawful killing with malice aforethought," but without the deliberate premeditation which characterizes murder in the first degree. *Commonwealth* v. *Bedrosian*, 247 Mass. 573, 576. "'Malice' as here used does not necessarily imply ill will toward the person killed, but has a more comprehensive meaning, including any intent to inflict injury

upon another without legal excuse or palliation." *Ibid.*
"Malice includes 'every . . . unlawful and unjustifiable
motive' and is 'implied from any deliberate or cruel act
against another, however sudden.'" *Commonwealth* v. *Leate,*
352 Mass. 452, 456, and cases cited.

The throwing of Vadeikis to the ground and the kicking
of him in the stomach with such force as to cause death by
internal bleeding amply warranted a finding of malice,
which is the element distinguishing murder from man-
slaughter. The verdict of the jury impliedly rejected the
defendants' contention that the killing occurred in "a
sudden transport of passion or heat of blood, upon a reason-
able provocation and without malice, or upon sudden com-
bat," which, if accepted, would mitigate what otherwise
would be murder to manslaughter. *Commonwealth* v. *Soaris,*
275 Mass. 291, 299. *Commonwealth* v. *Hartford,* 346 Mass.
482, 490–491.

2. The defendants contend that in addition to his charge
on voluntary manslaughter the judge should have instructed
the jury on involuntary manslaughter. In support of their
contention they cite *Commonwealth* v. *Campbell,* 352 Mass.
387, 397, where this court said, "Involuntary manslaughter
is an unlawful homicide, unintentionally caused (1) in the
commission of an unlawful act, malum in se, not amounting
to a felony nor likely to endanger life . . ., or (2) by an act
which constitutes such a disregard of probable harmful con-
sequences to another as to constitute wanton or reckless
conduct." The only evidence of the manner in which
Vadeikis died showed one or more intentional, forceful and
deliberate kicks to his stomach as he was lying on his back.
The unlawful battery was quite "likely to endanger life,"
and hence could not be classified under the first above
described type of involuntary manslaughter. Plainly the
result of the kicking, i.e., physical injury to the deceased,
was intended as much as the kicking action itself. Hence,
it cannot be termed merely a "disregard of probable harmful
consequences." Compare *Commonwealth* v. *Campbell, supra,*
352 Mass. 387, 397–398.

3. The defendants assign as error the latitude allowed the district attorney in his cross-examination of the defendant Hicks at a voir dire. Hicks testified in support of what must be termed a motion to suppress evidence based on his assertion that he was illegally arrested, interrogated and exhibited to witnesses. He related his version of the events surrounding and immediately following his arrest. On cross-examination, the district attorney was allowed to inquire of Hicks' activities throughout the day, before the time of the arrest. It was brought out that Hicks had been with Hubbard at the South Boston Cafe, and that the bartenders there had seen them. The defendants contend that this information was irrelevant to the purpose of the voir dire, and was relevant only to the guilt of the defendants.

The scope or extent of cross-examination is largely discretionary with the judge. *Commonwealth* v. *Aronson*, 330 Mass. 453, 458–459. *Commonwealth* v. *Granito*, 326 Mass. 494, 496. *Commonwealth* v. *Nunes*, 351 Mass. 401, 406. The judge allowed the prosecuting attorney to explore the earlier events of the day in order to ascertain whether, what and how much Hicks had been drinking, and consequently to determine the reliability of his recollection of the events at his arrest and later at the police station. Even if we were to assume that it was error to allow the questioning, there was no prejudice to either defendant. No statement made by Hicks under cross-examination at the voir dire was introduced before the jury. Compare *Simmons* v. *United States*, 390 U. S. 377, 394.

4. We are not disposed to modify the verdict under the principles stated and applied in *Commonwealth* v. *Baker*, 346 Mass. 107, 109.

5. Other assignments of error have been considered as required by G. L. c. 278, § 33E. We find no error.

*Judgments affirmed.*