COMMONWEALTH *vs.* BARRY W. HODGE (No. 2).

Franklin. May 7, 1980. — June 12, 1980.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide. Malice. Evidence,* Judicial discretion, Relevancy and materiality. *Practice, Criminal,* Failure to make objection, Instructions to jury, Capital case. *Constitutional Law,* Ex post facto law.

At the trial of a murder case, the judge did not abuse his discretion in excluding evidence concerning the defendant's prior use of the expression, "He'll leave in a hearse," offered to demonstrate that the expression, when used in relation to the victim, did not connote a murderous intent. [862-863]

At the trial of a murder case, there was no error in the admission of evidence that the defendant, as a police officer, had learned to shoot at and had taught other police officers to shoot at human silhouette targets with a maximum score circle located in the heart or chest area. [863-864]

At the trial of a murder case, the judge's charge to the jury concerning the definition and proof of malice did not contain language enabling the jury to convict the defendant of murder upon findings appropriate for a verdict of manslaughter or relieving the Commonwealth of its burden to prove the existence of malice beyond a reasonable doubt. [864-866]

The interest of justice did not require this court to reduce a verdict from murder in the second degree to manslaughter where there was ample evidence at a murder trial from which the jury could infer malice. [867-868]

INDICTMENT found and returned in the Superior Court Department on June 11, 1979.

The case was tried before *Alberti,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Leonard H. Cohen (David O. Burbank* with him) for the defendant.

*Stephen R. Kaplan*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. In this case we are presented with the appeal of Barry W. Hodge from a conviction of murder in the second degree. Hodge was granted a stay of execution of his life sentence by the trial judge and the Commonwealth's motion to revoke the stay was denied by a single justice of this court. We affirmed the order of the single justice. *Commonwealth* v. *Hodge No. 1, ante* 851 (1980). We now consider the defendant's full appeal, including his allegations of error at the trial as well as his prayer for extraordinary relief under G. L. c. 278, § 33E.

The defendant raises the following issues in this appeal: (1) whether the trial judge erred by excluding evidence concerning the defendant's prior use of the expression, "He'll leave in a hearse," offered to demonstrate that the expression, when used in relation to the victim, did not connote a murderous intent; (2) whether the trial judge erred by admitting evidence that the defendant had previously shot at human silhouette targets with a maximum score circle located in the chest area; (3) whether the jury instruction on malice violated the due process clause of the Fourteenth Amendment to the Constitution of the United States or art. XII of the Massachusetts Declaration of Rights; (4) whether this court should exercise its extraordinary powers under G. L. c. 278, § 33E, by directing the entry of a verdict of manslaughter.

We conclude that there was no error in the judge's evidentiary rulings or charge to the jury. Furthermore, upon consideration of the law and the evidence, we find no reason to exercise our power under G. L. c. 278, § 33E, to reduce the verdict from murder in the second degree to manslaughter. Therefore, we affirm the defendant's conviction of murder in the second degree.

The facts, as relevant to this appeal, are as follows. On June 8, 1978, the defendant killed Russell D. Eugin by shooting him in the chest with a .38 caliber revolver, the bullet passing through the heart. The incident took place at

Bassett Farm on Upper Road in South Deerfield. Bassett Farm had previously been the marital home of Eugin and his former wife Virginia. At the time of the shooting the defendant was living at Bassett Farm with his wife, the former Virginia Eugin, and the two children of her marriage with Russell Eugin, Candace and Daniel.

Virginia Hodge testified that in the early evening of June 8, 1978, Russell Eugin placed a telephone call to Bassett Farm and spoke with each of his children. He requested to speak to Virginia, but when Candace relayed this request, Virginia refused to come to the telephone and Candace told her father that Virginia was not at home. Several minutes after the first call, Eugin called again. He spoke first to the children, but when he stated in a loud and gruff tone that he was coming to the house Daniel gave the telephone to the defendant. The defendant testified that he asked Eugin what his problem was and Eugin replied, "You're my problem, numbnuts, and I'm coming over to take care of you once and for all." At this point Eugin hung up the telephone.

The defendant, Virginia, Candace, and Daniel repaired to the master bedroom. The defendant stated that Eugin was a moron and that if he came through the mudroom door, or if he tried to get into the house, he would leave in a hearse.

Twenty minutes after the defendant made this statement, Candace saw Eugin driving up the driveway. The defendant picked up his fully loaded .38 caliber police handgun and proceeded downstairs, through the kitchen and the mudroom and into the garage. He threw open the garage door and saw Eugin in his car, stopped in the driveway. Eugin stepped out of his car and the defendant stepped out of the garage.

According to the defendant's testimony, Eugin told the defendant that the defendant must not marry Virginia. The defendant responded by informing Eugin that they were already married. At this point Eugin became enraged and threatened to kill both the defendant and Virginia.

Eugin approached the defendant and a fist fight ensued, during which Eugin seized a pitchfork and charged at the defendant. At this point the defendant drew his gun, cocking the weapon as he removed it from his holster. When Eugin approached, the defendant grabbed the pitchfork with his free hand in order to avert it. The two men struggled and the larger Eugin began to overpower the defendant. Eugin grabbed the defendant's gun hand and the gun fired into Eugin's chest. The defendant was not sure in his testimony if the weapon had fired accidentally or if he had pulled the trigger because he was about to be killed.

Although Candace and a neighbor both testified that they heard the shot, neither one heard any preceding altercation. There was expert testimony from a pathologist that the muzzle of the weapon was probably between twelve and eighteen inches from Eugin's chest at the time it fired, and from a ballistician that the distance was between eighteen inches and two or three feet. The angle of the shot, which entered Eugin's chest almost at the breastbone about two inches below the nipple, was downward and to the left. Although the defendant stated that he grabbed the pitchfork in such a manner as to prevent the powerful Eugin from stabbing him with it, he suffered no burn or other injury to his hand. There was testimony from the investigating police officers as well as the defendant's own admission that the defendant had moved the body of the victim after the shooting.

There was also evidence that two months prior to the killing the defendant had told the Deerfield chief of police that he did not need to worry about Eugin because he wore a gun and knew how to use it. When, on a previous occasion, Eugin had telephoned to say that he was coming over to remove the defendant from the house, the defendant waited for him until 3 A.M., wearing a gun. The Commonwealth also adduced evidence that, as a firearms instructor for the Orange police department, the defendant both learned to shoot at and taught fellow police officers to shoot at human silhouette targets with a maximum score circle located in the heart or chest area.

1. The Commonwealth presented testimony from Daniel, Candace, and Virginia, along with the defendant's own admission, that prior to Eugin's arrival at Bassett Farm the defendant stated that if Eugin came through the door he would leave in a hearse. The defendant testified that this statement implied no specific animosity or threat but was merely part of his common vernacular in circumstances where he was faced with the possibility of a physical confrontation. The defendant offered to introduce the testimony of one of his fellow police officers who had participated with him in numerous arrests involving altercations. This witness was prepared to testify that in such situations the defendant had frequently joked that an aggressor would "leave in a hearse" as a means of relaxing himself and others. The judge excluded the proffered testimony of this witness.

We conclude that in doing so the judge did not abuse his discretion. The relevance of evidence concerning the defendant's use of the expression under circumstances different from those in the instant case is questionable at best. The "burden [of showing an abuse of judicial discretion] is not met by merely arguing that on a debatable question of admissibility the judge ruled against the defendant while another judge could and might have ruled in his favor." *Commonwealth* v. *Bys*, 370 Mass. 350, 361 (1976).

In the instant case the trial judge's view is reasonable and supported by analogous precedent. The judge apparently did not want to admit collateral evidence of the defendant's behavior in circumstances different from those involved in the crime lest the jury be distracted from the facts and issues at bar. See *Commonwealth* v. *Nagle*, 157 Mass. 554, 555 (1893) ("For the purpose of proving that one has or has not done a particular act, it is not competent to show that he has or has not been in the habit of doing other similar acts"). *Commonwealth* v. *Webster*, 5 Cush. 295, 325 (1850) ("[W]here it is a question of great and atrocious criminality, the commission of the act is so unusual, so out of the ordinary course of things and beyond common experience; it is so manifest that the offence, if perpetrated, must have been

influenced by motives not frequently operating upon the human mind; that evidence of character, and of a man's habitual conduct under common circumstances, must be considered far inferior to what it is in the instance of accusations of a lower grade").

2. The Commonwealth introduced testimony by the Orange chief of police that, as a firearms instructor for the Orange police department, the defendant both learned to shoot at and taught other police officers to shoot at human silhouette targets with a maximum score circle located in the heart or chest area. The defendant argues first that this evidence should have been excluded because it was not relevant. We disagree because, as the trial judge explained, "[t]he evidence . . . was admitted for the purpose of showing the defendant's proficiency in the use of handguns and the area of the human body at which the defendant had trained himself to shoot. The information was relevant because of [*sic*] the location of the wound in the victim's chest supported the Commonwealth's contention that the defendant deliberately aimed his weapon at the victim with the intent to kill him, and the location of the wound tended to refute the defendant's contention that the weapon went off during a struggle."

The defendant argues further that, assuming the evidence was relevant, it should nevertheless have been excluded by the trial judge on the ground that it was excessively inflammatory. "Whether such evidence was so inflammatory in nature as to outweigh its probative value and preclude its admission is a question to be determined by the trial judge in the exercise of his sound discretion." *Commonwealth* v. *D'Agostino*, 344 Mass. 276, 279, cert. denied, 371 U.S. 852 (1962). However, "the occasions for exclusion on just that ground have been rare indeed." *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 817 (1973). See *Commonwealth* v. *Cobb*, 379 Mass. 456 (1980). Cf. *Commonwealth* v. *Gouveia*, 371 Mass. 566 (1976). We perceive no abuse of discretion in the instant case.[1]

---

[1] We observe that within his discretion, for reasons which appear logically from the facts, the judge could properly rule that this evidence did

Even evidence of criminal conduct apart from the crime charged is admissible if the evidence tends to prove a particular way of doing an act, or to prove a particular skill. *Commonwealth* v. *Davis*, 376 Mass. 777, 788 (1978). A fortiori the Commonwealth had the right to show the defendant's particular way of firing at targets representing human beings and his skill in doing so, through the use of evidence of his public acts in the practice of a reputable occupation.

3. The defendant contends that the judge erred in his jury charge concerning the definition and proof of malice, thereby enabling the jury to convict the defendant of murder upon findings appropriate for a verdict of manslaughter as well as relieving the Commonwealth of its burden to prove the existence of malice beyond a reasonable doubt. Trial counsel for the defendant did not object to the judge's charge to the jury. Ordinarily, such inattention of counsel would preclude review of the issue on our part. *Commonwealth* v. *Johnson*, 379 Mass. 117 (1979). *Commonwealth* v. *Cook*, 351 Mass. 231, 237, cert. denied, 385 U.S. 981 (1966). "Nevertheless, we are mindful that 'in appropriate instances this court has and will exercise the power to set aside a verdict or finding in order to prevent a miscarriage of justice when a decisive matter has not been raised at trial.'" *Commonwealth* v. *Johnson, supra* at 178, quoting from *Commonwealth* v. *Conroy*, 333 Mass. 751, 757 (1956). See *Commonwealth* v. *Goulet*, 374 Mass. 404, 415-416 (1978). Therefore, we examine the defendant's contentions under this standard.

The defendant isolates the following passages from the charge as the sources of the alleged error. "If a homicide is shown to have been committed without justification, and as a result of a deliberated act, it is sufficiently proved to have been done with malice aforethought. And malice in such a case is not disproved by showing that the accused had no

---

not involve the likelihood of confusion resulting from collateral evidence of the defendant's behavior in various circumstances different from those involved in the crime.

personal ill will against the victim, but killed the victim for some other motive . . . .

"Therefore, malice is implied from any deliberate or cruel crime against another, however sudden. Whether a homicide is committed with malice aforethought is determined from the nature and cruelty of the act which attends the killing as they tend to reveal the state of heart and mind of the killer. When the circumstances disclose that the fatal blow is purposeful and wrongful, and not the result of chance or frailty of humanity, there is malice aforethought."

The statement that malice includes not only personal ill will, but also every other unlawful and unjustifiable motive, is in accord with authority. See *Commonwealth* v. *Hicks,* 356 Mass. 442, 444-445 (1969). Cf. *Commonwealth* v. *Niziolek, ante* 513 (1980). So also is the statement that malice comprehends any intent to inflict injury without justification. See *Commonwealth* v. *Hicks, supra, Commonwealth* v. *McGuirk,* 376 Mass. 338, 345 (1978). Cf. *Commonwealth* v. *Niziolek, supra* at 526-527. The statement that malice is implied from any deliberate or cruel crime against another, however sudden, is set out in *Commonwealth* v. *Hicks, supra* at 445.

Contrary to the defendant's hypothesis, nothing in the judge's language would have led the jury to convict the defendant of murder upon findings appropriate to a verdict of manslaughter under circumstances of sudden combat. Manslaughter under circumstances of sudden combat is not committed as the result of a deliberated act, but is homicide in heat of blood, a perturbation of mind palliating the intent to inflict injury. The fatal blow is not purposeful but is the result of chance and frailty of humanity. See *Commonwealth* v. *Peters,* 372 Mass. 319, 324 (1977). Conversely, a fatal blow purposefully and wrongfully inflicted and not resulting from chance or the frailty of humanity is malicious and murderous. The court's instruction to that effect was rightly given.

The defendant's argument that the jury instructions improperly shifted to the defendant the burden of disproving

an element of the crime, see *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), is unconvincing. At least one of the judge's phrases, when lifted out of context, is admittedly imprecise and potentially misleading to a jury. The judge's use of the words "malice . . . is not disproved" could improperly create the impression that the defendant is required to disprove malice. We do not believe, however, that this unfortunate choice of words created a substantial risk of miscarriage of justice when read in light of the rest of the charge concerning malice and the burden of proof.

The judge repeatedly cautioned the jury that the burden lay upon the Commonwealth to prove every element of the crime beyond a reasonable doubt. The following careful and proper words of the judge were sufficient to delineate the law clearly and preclude any substantial risk of a miscarriage of justice by a misallocation of the burden of proof. "Malice is negated when the intention to kill is formed in the heat of sudden affray or combat. In this respect, the Commonwealth has the burden of proving beyond a reasonable doubt that the homicide or killing did not occur in the heat of passion or of sudden provocation. . . .

"If you find that there is no murder, that is, the unlawful killing of a human being with malice aforethought, and that the Commonwealth has not proven it beyond a reasonable doubt, then you must find the defendant not guilty on so much of the indictment as alleges murder."

"Insofar as the choice lies between murder and manslaughter, it is incumbent upon the Commonwealth of Massachusetts to prove to you beyond a reasonable doubt that the crime is murder. Otherwise, you are warranted only in convicting the defendant of manslaughter. In order to demonstrate that the crime of homicide of any degree has been committed, the Commonwealth must bear the burden of convincing you beyond a reasonable doubt that Russell Eugin's death did not result from an accident in which the defendant was free of fault, or from an act that was merely negligence or from the reasonable use of force in self-defense or defense of others."

4. The defendant argues finally that this court should exercise its authority under G. L. c. 278, § 33E, by ordering entry of a verdict of manslaughter. At the time the offense was committed, G. L. c. 278, § 33E, provided in part, "In a capital case as hereinafter defined the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence. For the purpose of such review a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder either in the first or *second degree*" (emphasis added).

Chapter 346, § 2, of St. 1979, amended the last quoted sentence to read: "For the purpose of such review a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree." This amendment became effective July 1, 1979, approximately one week before commencement of the trial below. The defendant argues that the statutory amendment, which took effect after the murder but before the trial, cannot be applied to this case consistently with the constitutional prohibition against the imposition of penalties ex post facto. See the Constitution of the United States, art. 1, § 10; Massachusetts Constitution Part 1, art. 24; *Dobbert* v. *Florida*, 432 U.S. 282, 293 (1977); *Commonwealth* v. *Phelps*, 210 Mass. 78, 79-80 (1911), and cases cited. For the purpose of this opinion we may assume that the defendant's argument is valid and that this appeal must be considered under the "old" version of § 33. See *Commonwealth* v. *Davis, ante* 1, 16 (1980). Consequently, we have reviewed the entire record as though § 33E were fully applicable in this case. Our review of the law and the entire record leads us to conclude that even if

the defendant were entitled to § 33E review, we would refrain from exercising this extraordinary power to reduce the verdict in the instant case.[2]

The evidence which tended to support the defendant's arguments that the death occurred in self-defense, or in heat of combat and without malice, came entirely from the defendant. There was ample evidence from which the jury could infer malice. For example, the defendant stated to Officer Skroski that he did not need to worry about Eugin because he (the defendant) had a gun. Moreover, the defendant had armed himself while waiting for Eugin on a prior occasion; and on the night of the killing he had removed the safety strap from the holster before going to meet Eugin. Finally, the defendant, an experienced former police officer, did not take the opportunity to call for police assistance when he knew that Eugin was coming to his house. Instead he chose to arm himself with a revolver and face Eugin alone. All of this evidence, and more, militated against a manslaughter verdict or a verdict of not guilty.

"As we said at the commencement of this opinion, this is not a case where the interest of justice requires an order changing the verdict of the jury from murder in the second degree to manslaughter. The evidence was highly conflicting. The jury declined to accept the defendant's claim of self-defense. Unlike *Commonwealth* v. *Jones*, 366 Mass. 805, 809 (1975), the great weight of the evidence does not tend to establish that the killing was carried out without malice aforethought." *Commonwealth* v. *Greene*, 372 Mass. 517, 522 (1977).

*Judgment affirmed.*

---

[2] We observe that whether or not a case has § 33E statutory eligibility, we have long since applied a similar standard of review as in part 3 above.