COMMONWEALTH *vs.* JACK E. ORAM, JR.   December 8, 1983. *Practice, Criminal,* Conduct of prosecutor, Deliberation of jury, New trial. *Jury and Jurors. Evidence,* Relevancy and materiality. *Self-Defense.*

Oram was convicted of manslaughter and assault and battery by means of a dangerous weapon. There was highly conflicting evidence concerning the events leading to the death of the victim. The jury were presented with difficult questions concerning whether Oram was in any degree an aggressor and whether he acted reasonably in self-defense. These questions have not been argued to us.

The trial judge denied Oram's motion for a new trial and his motion for leave to have postconviction interviews with members of the jury. On this appeal from a sentence of probation for five years, with the obligation to do 1,000 hours of public service at the Fernald State School in Waltham, Oram argues only a limited number of issues. We affirm for substantially the reasons stated in the judge's memorandum and order on those motions.

There was no appeal from the denial of the motion for a new trial. Some issues argued may have been raised only by that motion. Whether these issues are properly before us (in view of our conclusions), we need not decide. See Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975). See also *Commonwealth* v. *Washington,* 15 Mass. App. Ct. 378, 384-385 (1983).

1. An assistant district attorney (prosecutor no. 1) found a file upon his table in the courtroom and discussed it briefly with another employee in the same office (prosecutor no. 2). It was discovered that the file had been mislaid by defense counsel through inadvertence. Prosecutor no. 1 examined it to some extent before he became aware that it belonged to defense counsel. The matter was brought to the attention of the trial judge promptly at a lobby conference called unexpectedly on another matter while prosecutor no. 1 was discussing the file with defense counsel. Prosecutor no. 1, at the direction of the judge, turned the file and a copy that had been made of it over to defense counsel shortly after the lobby conference. The defense counsel then sought no further action by the judge.

Counsel filed somewhat conflicting affidavits about the incident. At the hearing on the motion for a new trial, the trial judge made careful inquiry and seemed particularly disturbed that, in what may have been a somewhat confused and hurried conversation between prosecutor no. 1 and prosecutor no. 2, the former, wholly inappropriately, at least consented to having the file photocopied.

The trial judge, in addition to his inquiry, had observed both counsel during a trial lasting at least seven days. He recognized that the file's contents "were somewhat sensitive and could have been used to the prosecution's advantage." He decided, however, "that the initial taking was purely accidental, that the copying was . . . poor judgment only, and that the prosecutor's [no. 1] statement that the contents were not read or used . . . is believed and accepted." He concluded that the "questionable judgment . . . was quickly rectified without any established prejudice to the defendant." He correctly distinguished *Commonwealth* v. *Manning*, 373 Mass. 438, 442-444 (1977), where there was a "deliberate and intentional attack by . . . [Federal] agents on the relationship between" a defendant and his counsel "in a calculated attempt to coerce . . . [that] defendant into abandoning his defense." The trial judge's wholly warranted findings show nothing of that sort in the present case. See *Commonwealth* v. *Sherman*, 389 Mass. 287, 295 (1983).

2. A lawyer serving on the jury turned out to have been associated with the same law firm as a cousin (named DeMarco) of a witness also named DeMarco. During the selection of the jury, the juror had disclosed to the trial judge a professional contact with defense counsel, but had not referred to the relationship just mentioned. The affidavit of defense counsel did not aver that the juror was aware of the relationship and defense counsel conceded that he did not know whether there had been any impropriety on the juror's part. The judge correctly ruled that the showing was insufficient to establish lack of impartiality on the part of the juror or to require the judge to permit interrogation of jurors. There certainly was no proof of any extraneous disturbing influence upon the jury which would require the judge to make or permit inquiry of jurors after verdict. See *Commonwealth* v. *Fidler*, 377 Mass. 192, 197 (1979). See also *Commonwealth* v. *Maltais*, 387 Mass. 79, 91-92 (1982); *Commonwealth* v. *Coleman*, 389 Mass. 667, 675-676 (1983); *Commonwealth* v. *Scanlan*, 9 Mass. App. Ct. 173, 182-184 (1980); *Commonwealth* v. *Royster*, 15 Mass. App. Ct. 970, 971 (1983). Cf. *Commonwealth* v. *Tavares*, 385 Mass. 140, 155-156 (1982).

3. That a juror reported that a juror, a lawyer, took a leading part in jury deliberations required no inquiry of other jurors. Statute 1982, c. 298, § 1, inserting G. L. c. 234A, § 45, became effective just prior to or during trial. By its terms, the statute did not require the trial judge to instruct, in the absence of a motion that he do so, "that no impanelled juror

is better qualified to determine the truth of the facts in controversy . . . solely because of his occupation or reputation."

4. The trial judge reasonably received evidence concerning Oram's knowledge of karate, limited to the means of self-defense available to him. The judge, in his discretion, could properly conclude that the relevance of this evidence outweighed its possible prejudice. See *Commonwealth* v. *Hodge (No. 2)*, 380 Mass. 858, 863-864 (1980); Liacos, Massachusetts Evidence 410 (1981 and Supp. 1983).

> *Order denying new trial affirmed.*

> *Judgment affirmed.*

*Charles A. Clifford* for the defendant.
*Pamela L. Hunt*, Assistant District Attorney, for the Commonwealth.