Lewis H. DICKERSON,
Petitioner, Appellant,

v.

Arthur LATESSA,
Respondent, Appellee.

No. 88–1764.

United States Court of Appeals,
First Circuit.

Heard Jan. 11, 1989.

Decided April 25, 1989.

John P. Osler, Boston, Mass., Committee for Public Counsel Services, for petitioner, appellant.

Linda G. Katz, Asst. Atty. Gen., Crim. Bureau, with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, ALDRICH and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Lewis H. Dickerson appeals from the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1982).

Dickerson's petition challenges on equal protection grounds the so-called "gatekeeper" provision of Mass.Gen.Laws Ann. ch. 278, § 33E (1981). Under that provision, a defendant like Dickerson who was convicted of a capital offense in a Massachusetts court is not entitled, following direct appeal, to appellate review of the denial of a post-conviction motion "unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court." Dickerson contrasts that provision with other Massachusetts laws affording to non-capital defendants an unrestricted right to seek appellate review of the denial of a post-conviction motion.

We hold that section 33E, when examined broadly in context of the special Massachusetts procedures for review in capital cases, does not deny Dickerson the equal protection of the laws. We consequently affirm the district court's denial of Dickerson's petition.

## I. BACKGROUND

Under Massachusetts law, defendants convicted of capital offenses are treated differently from those convicted of noncapital offenses.[1] A capital defendant is given the right to appeal from his conviction directly to the full bench of the Supreme Judicial Court ("SJC") where he receives plenary review "regardless of the absence of claim of error."[2] *Commonwealth v. Brown*, 376 Mass. 156, 168, 380 N.E.2d 113, 120 (1978). Section 33E states in pertinent part:

In a capital case ... the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence.

Section 33E "consigns the facts as well as the law to [the SJC's] consideration, gives [the SJC] the power and duty exercised by a trial judge on a motion for new trial, and requires [the SJC] to consider the whole case broadly to determine whether there

---

1. Section 33E's special review procedures are limited to "capital cases." The statute defines a "capital case" to "mean a case in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree." Here we use the term "capital offense" and "capital defendant" as a shorthand for first degree murder and those convicted of this offense. No Massachusetts defendant, including one convicted of first degree murder, may presently be subjected to the death penalty. *See Dickerson v. Attorney General*, 396 Mass. 740, 741 n. 1, 488 N.E.2d 757, 758 n. 1 (1986). Conviction of first degree murder, however, subjects defendant to a mandatory term of life imprisonment without the possibility of parole. Mass.Gen.Laws. Ann. ch. 265, § 2 (Supp.1988).

2. The SJC is Massachusetts's highest court. Below it is the intermediate Massachusetts Appeals Court. Most criminal appeals are reviewed as of right in the Appeals Court; review of noncapital appeals in the SJC is limited, requiring the SJC's special permission. Capital cases form a select group which go directly to the SJC without prior Appeals Court review and without the SJC's special permission.

was any miscarriage of justice." *Commonwealth v. Hurley*, 391 Mass. 76, 81, 461 N.E.2d 754, 757 (1984) (citations omitted). On several reported occasions, the SJC *sua sponte* has addressed issues discovered during the court's plenary review under section 33E that the capital defendant overlooked. *See, e.g., Commonwealth v. Repoza*, 382 Mass. 119, 132, 414 N.E.2d 591, 599 (1980); *Commonwealth v. Callahan*, 380 Mass. 821, 822, 406 N.E.2d 385, 386 (1980).

In contrast, direct appellate review in noncapital cases is limited to issues raised on appeal and to claims of legal error which were preserved by objection at trial or which present a substantial risk of a miscarriage of justice. *See Commonwealth v. Ely*, 388 Mass. 69, 77–78, 444 N.E.2d 1276, 1281–82 (1983); *Commonwealth v. Freeman*, 352 Mass. 556, 564, 227 N.E.2d 3, 9 (1967).

The current dispute relates solely to the differences in the appellate review allowed for the denial of post-conviction motions. Section 33E provides in pertinent part:

> If any motion [in a capital case] is filed in the superior court after [the filing of the rescript by the SJC], no appeal shall lie from the decision of [the superior court] upon such a motion unless the appeal is allowed by a single justice of the supreme judicial court on the ground that it presents a new and substantial question which ought to be determined by the full court.

A capital defendant ought not be allowed to press an appeal where the issues raised in his post-conviction motion were or could have been raised at trial or on appeal. *Commonwealth v. Ambers*, 397 Mass. 705, 707–08, 493 N.E.2d 837, 839 (1986). "The statute requires that the defendant present all his claims of error at the earliest possible time, and failure to do so precludes relief on all grounds generally known and available at the time of trial or appeal." *Commonwealth v. Pisa*, 384 Mass. 362, 365–66, 425 N.E.2d 290, 293 (1981). The

determination of the gatekeeper judge under section 33E is unreviewable. *Leaster v. Commonwealth*, 385 Mass. 547, 548, 432 N.E.2d 708, 709 (1982).

Noncapital defendants, on the other hand, are allowed under Mass.R.Crim.P. 30(c)(8) an appeal as of right to the Appeals Court from the denial of a post-conviction motion, including motions that raise issues that could have been raised at trial but were not, although consideration of such issues is generally limited to determining whether there is a substantial risk of a miscarriage of justice. *See, e.g., Reddick v. Commonwealth*, 381 Mass. 398, 404, 409 N.E.2d 764, 769 (1980). Noncapital defendants may also petition for direct or further review by the SJC, Mass.R.App.P. 11, 27.1, and may also petition the Appeals Court for reconsideration. Mass.R.App.P. 27.

In September 1975 Dickerson was convicted in Suffolk Superior Court of first degree murder, armed robbery and unlawfully carrying a firearm. The SJC affirmed the conviction on direct appeal after reviewing the entire record pursuant to section 33E. *Commonwealth v. Dickerson*, 372 Mass. 783, 364 N.E.2d 1052 (1977). Over two years later, Dickerson filed a motion for post-conviction relief in state superior court, challenging the constitutionality of the trial judge's jury instructions. The superior court denied the motion. Dickerson sought leave under section 33E from a single justice of the SJC to appeal from the denial of the motion to the full court. The justice denied Dickerson leave to appeal, finding that his post-conviction claims did not present "a new and substantial question." Dickerson subsequently brought an action for declaratory relief in state court, challenging the constitutionality of the gatekeeper provision of section 33E.[3] The SJC rejected this challenge and upheld the statute. *Dickerson v. Attorney General*, 396 Mass. 740, 488 N.E.2d 757 (1986). Dickerson then filed this habeas corpus petition in federal court. The district court denied the petition.

---

**3.** Before bringing this action for declaratory relief in state court, Dickerson challenged the constitutionality of section 33E in a habeas corpus petition filed in federal court. This petition was dismissed for failure to exhaust state remedies. *Dickerson v. Walsh*, 750 F.2d 150 (1st Cir.1984).

*Dickerson v. Latessa,* 688 F.Supp. 797 (D.Mass.1988). Dickerson appeals from this ruling.

## II. DISCUSSION

■ The Fourteenth Amendment to the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." Under this clause,

> absent a classification interfering with the exercise of a fundamental right or operating to the peculiar disadvantage of a suspect class, *see Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 312 [, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520] (1976), a state's conduct need only bear a reasonable relationship to some proper object. *Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 [40 S.Ct. 560, 561, 64 L.Ed. 989] (1925).

*Bauza v. Morales Carrion,* 578 F.2d 447, 450 (1st Cir.1978). This deferential "rational basis test" applies, therefore, except when the legislative classification implicates a fundamental right or disadvantages a suspect class; strict judicial scrutiny is warranted in the latter two circumstances, and the challenged statute may then stand only if it advances a compelling governmental interest. *See Maher v. Roe,* 432 U.S. 464, 470, 97 S.Ct. 2376, 2380, 53 L.Ed.2d 484 (1977); *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 16–17, 93 S.Ct. 1278, 1287–1288, 36 L.Ed.2d 16 (1973).

■ We conclude that the "rational basis test" is the appropriate standard of review in this case. Dickerson does not and could not successfully contend that, as a person convicted of first degree murder, he is a member of a suspect class. *See Williams v. Lynaugh,* 814 F.2d 205, 208 (5th Cir.) (capital defendants not a suspect class for equal protection purposes), *cert. denied,* — U.S. —, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987). Nor does the gatekeeper provision of section 33E interfere with the exercise of a fundamental right. The Supreme Court has held that a state is not constitutionally obliged to provide even a direct appeal for a criminal defendant. *Ross v.*

*Moffitt,* 417 U.S. 600, 606, 94 S.Ct. 2437, 2441, 41 L.Ed.2d 341 (1974); *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). There can hardly be, therefore, a fundamental right to appellate review of a trial court's post-conviction rulings. *Cf. Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (no constitutional right to counsel in post-conviction proceeding); *United States v. MacCollom,* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976) (no absolute right to free transcript in post-conviction appeal). In any case, section 33E does not deny Dickerson all opportunity for appellate review of post-conviction claims for relief. He may secure review of probably the most urgent category of such claims, namely, those that are "new and substantial." *See Leaster v. Commonwealth,* 385 Mass. 547, 550, 432 N.E.2d 708, 710 (1982) (single justice review under section 33E "will allow access to the full court in meaningful matters"). Section 33E is aimed at screening out frivolous and procedurally waived claims raised after the defendant was once afforded the enlarged review by the SJC to which a capital defendant is specially entitled on direct appeal.

Support for use of the "rational basis test" appears in the Supreme Court's language in cases dealing with access to the appeals process. *See Estelle v. Dorrough,* 420 U.S. 534, 538, 95 S.Ct. 1173, 1176, 43 L.Ed.2d 377 (1975) ("[T]his Court in dealing with equal protection challenges to state regulation of the right of appeal in criminal cases ha[s] applied the traditional rational-basis test."). *See also Rinaldi v. Yeager,* 384 U.S. 305, 309, 86 S.Ct. 1497, 1499, 16 L.Ed.2d 577 (1966). It is true, as the district court has pointed out, *Dickerson,* 688 F.Supp. at 800, that in certain analogous cases the Supreme Court has arguably exercised a somewhat heightened level of scrutiny in striking down the challenged legislative classification. *See, e.g., Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (state must furnish indigent criminal defendant with free trial transcript if such a transcript is necessary for effective appellate review); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9

L.Ed.2d 811 (1963) (invalidating rule requiring state appellate courts to appoint appellate counsel for indigent only upon a finding that appointed counsel would be helpful to the defendant or the court). But the above cases are distinguishable in that the invalidated impediments to an effective appeal were based on wealth, and consequently appear not only to implicate equal protection concerns but also due process safeguards as well. *Evitts v. Lucey,* 469 U.S. 387, 403–05, 105 S.Ct. 830, 839–40, 83 L.Ed. 2d 821 (1985) (due process played a "significant role" in these cases). *See also Bearden v. Georgia,* 461 U.S. 660, 665, 103 S.Ct. 2064, 2068, 76 L.Ed.2d 221 (1983); *Ross v. Moffitt,* 417 U.S. 600, 608–09, 94 S.Ct. 2437, 2442–43, 41 L.Ed.2d 341 (1974). The Ninth Circuit has stated, "[a]t least where the classification at issue is not based on wealth, the right to appeal is not considered a fundamental right" for equal protection purposes. *United States v. Avendano–Camacho,* 786 F.2d 1392, 1394 (9th Cir.1986) (Kennedy, J.) (citing *Bell v. Hongisto,* 501 F.2d 346, 353–54 (9th Cir.1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975)). *See also United States ex rel. Grundset v. Franzen,* 675 F.2d 870, 874 (7th Cir.1982); G. Stone, L. Seidman, C. Sunstein, M. Tushnet, *Constitutional Law* 797 (1986). We consequently apply the "rational basis test" in examining whether section 33E violates the equal protection clause.[4]

In applying that test here, we must determine whether " 'the distinctions that are drawn [by section 33E] have some relevance to the purpose for which the classification is made.' " *Estelle,* 420 U.S. at 539, 95 S.Ct. at 1176 (quoting *Rinaldi,* 384 U.S. at 309, 86 S.Ct. at 1499). Under this deferential approach, the "legislation is presumed to be valid," *City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985), and will not be overturned " 'unless the varying treatment of

different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' " *Pennell v. City of San Jose,* 485 U.S. 1, 108 S.Ct. 849, 859, 99 L.Ed.2d 1 (1988) (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942, 59 L.Ed.2d 171 (1979)). *See also City of Dallas v. Stanglin,* —— U.S. ——, ——, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989).

■ Section 33E satisfies the foregoing. The distinction drawn between capital and noncapital defendants in post-conviction appeals, when viewed in the context of the whole Massachusetts appeals process, is rationally related to the twin legislative objectives of assuring that the Commonwealth's highest court thoroughly review convictions of the most serious of offenses on a direct appeal, and at the same time, of relieving that court from the burden of subsequently entertaining waived or frivolous claims. Section 33E grants to the capital defendant the unique right to appeal directly to the SJC, the state's highest court, for plenary review of his conviction. On this direct appeal, the SJC, in a broad review to detect any miscarriage of justice, examines the entire record for factual as well as legal error, including errors not challenged by the defendant at trial or on appeal. By being able to examine issues that would not be open for scrutiny in the direct appeals of noncapital defendants, the SJC presumably reduces the number of matters calling for later review, making it reasonable to narrow the scope of any future review in the same case. As the SJC will have already become familiar with the record, it is also reasonable to channel to it, rather than to the Appeals Court, the post-conviction motions of capital defendants. And because the SJC, as the Commonwealth's highest court, possesses many responsibilities and will already have reviewed the entire record under the liberal standard, it is not unreasonable to delegate

---

4. State courts have applied the "rational basis test" in somewhat similar circumstances. *See Payne v. Commonwealth,* 233 Va. 460, 357 S.E. 2d 500, *cert. denied,* —— U.S. ——, 108 S.Ct. 308, 98 L.Ed.2d 267 (1987); *Ennis v. State,* 306 Md.

579, 510 A.2d 573 (1986); *Browning v. State,* 254 Ga. 478, 330 S.E.2d 879 (1985); *City of Klamath Falls v. Winters,* 289 Or. 757, 619 P.2d 217 (1980), *appeal dismissed,* 451 U.S. 964, 101 S.Ct. 2037, 68 L.Ed.2d 343 (1981).

to a single justice of the SJC the authority to screen out, on the SJC's behalf, those appeals that do not present "a new and substantial question." We accordingly hold that section 33E's gatekeeper provision does not deny Dickerson the equal protection of the laws.

*Affirmed.*

BAILEY ALDRICH, Senior Circuit Judge, dissenting.

I fully agree with the court that limiting rights of appeal is not, per se, a denial of a fundamental right. Nor are capital defendants a suspect class whose claims are subject to special scrutiny—there need only be a rational basis for disparity, rough, as distinguished from a searching measurement. And while I do not agree that "the most urgent category ... of claims [are] those that are 'new and substantial,'"—feeling, rather, that the most urgent are those that present a substantial risk of a miscarriage of justice, regardless of whether they are truly new or merely previously overlooked—again, that would not be important if there were a rational basis for treating capital defendants differently. In my opinion, there is no basis at all with respect to claims indicating a possible miscarriage of justice, described in Criminal Rule 30(b), where they can be pursued, "... if it appears that justice may not have been done." Capital defendants lose out, though they have received what comes to nothing.

Any defendant whose original appeal has failed may move in the superior court for a new trial under this rule if he has a claim that qualifies, and may, normally, thereafter, appeal to the Appeals Court under Rule 30(c)(8). If, however, he was a capital defendant, a pre-condition to appeal is a finding by a single justice that his point is new as well as substantial. "New" means not merely not considered before, but that could not have been considered before, and the statutory word "and" is, of course, conjunctive. *Commonwealth v. Ambers,* 397 Mass. 705, 493 N.E.2d 837 (1986). The statute is "unequivocal," *Leaster v. Commonwealth,* 385 Mass. 547, 549, 432 N.E.2d

708, 709 (1982), so unequivocal, in fact, that it is a substantive as well as a procedural bar. In *Commonwealth v. Johnson,* 399 Mass. 14, 502 N.E.2d 506 (1987), the single justice allowed the appeal, and the court, remarking that it was doing so for future illumination of the bar, stated that defendant's point was partially correct, but denied the appeal because, as to him, it was not new. A noncapital defendant, on the other hand, may obtain relief in the Appeals Court even though his point is not new. *Commonwealth v. Buckley,* 17 Mass.App.Ct. 373, 458 N.E.2d 781, *review denied,* 391 Mass. 1103, 461 N.E.2d 1219 (1984).

This is surely a difference of substance. The capital defendant has merely a bird in the bush, a hope the court may discover his point, and when the bird escaped notice, defendant has no further appeals. The court's statement that plenary review "assur[es] ... review" is utopian. Moreover, as to miscarriage of justice—Rule 30—claims, a capital defendant may not be alone even as to possessing a bird in the bush; so may others, but who, however, get fundamentally better treatment than he does.

The asserted reason for the distinction is that capital defendant gets something in exchange. Although the first to speak in constitutional terms of a "rational basis," *Dickerson v. Attorney General,* 396 Mass. 740, 743, 488 N.E.2d 757, 759 (1986), is not the first time the court held § 33E's special restriction on capital defendants warranted because of the special review afforded them under the earlier part of the statute. In *Leaster v. Commonwealth,* 385 Mass. at 549, 432 N.E.2d at 709, the court held the "gatekeeper" provision was justified because capital defendants "received the *plenary review* under § 33E, which is *designed to avoid miscarriage of justice and* which is *peculiarly available* in first degree murder cases." (Emphasis supplied.) Except that a capital defendant can appeal directly to the Supreme Judicial Court and others may end at the Appeals Court level, this is the sole basis given for saying that capital defendants cannot complain of unequal protection.

Singularly, on the same day as *Leaster*, March 11, 1982, the court decided, in *Greene v. Commonwealth*, 385 Mass. 1008, 432 N.E.2d 706, that a defendant convicted of murder in the second degree could appeal free of the gatekeeper provision. I say singularly because under § 33E as it existed at the time of Greene's conviction, as a defendant indicted and tried for first degree murder he received plenary review even though he had been convicted below only of second degree. *See Commonwealth v. Hodge (No. 2)*, 380 Mass. 858, 867, 406 N.E.2d 1015, 1020–21 (1980). Thus on the same day that the court justified curtailing a subsequent appeal by Leaster, convicted of first degree murder, because plenary review was "peculiarly available" to him, it imposed no restriction on Greene, convicted of second degree murder, although he had had precisely that same review.

*Greene* was a rescript opinion. It was not, however, a single aberration, but was followed thereafter in full opinions. *Commonwealth v. Zezima*, 387 Mass. 748, 443 N.E.2d 1282 (1982); *Commonwealth v. Festa*, 388 Mass. 513, 447 N.E.2d 1 (1983). It seems too obvious a question to ask, but how can it be rational to deprive a capital defendant of a privilege because he received an alternative benefit, while a lesser defendant received the benefit and the privilege, both?

The court's adhering to the letter of the statute, at the potential cost of capital defendants, occurred again in the recent, post-*Dickerson*, case of *Commonwealth v. Lattimore*, 400 Mass. 1001, 507 N.E.2d 754 (1987). There the defendant had been convicted of first degree murder. He appealed, receiving plenary review, and his conviction was reduced to second degree. Thereafter he moved in the Superior Court for a new trial under Rule 30(b) and, the motion being denied, appealed to the Appeals Court. When that court appointed counsel for him to prosecute the appeal, the Commonwealth appealed to the Supreme Judicial Court, claiming the post-conviction appeal needed single justice approval. The court disagreed. Since he now stood convicted of second degree only, the gatekeep-

er provision and its requirements did not apply. Yet, obviously, had his conviction not been reduced, the plenary review would have meant no further appeals on claims not new. Again, a noncapital defendant with both worlds.

This was in accordance with a strict reading of the statute, but I must think that the statute leads to attention to the bath water rather than the baby. Its effect is not simply a screening procedure. To recapitulate, compare defendant *Lattimore* (400 Mass. 1001, 507 N.E.2d 754), ante, with defendant *Johnson* (399 Mass. 14, 502 N.E. 2d 506).

Quite apart from these holdings directly applying the statute itself, the court is liberal on the direct appeal of every defendant with respect to claims involving a miscarriage of justice. In *Hodge (No. 2)*, a second degree case in which defendant contended that the old statute applied, so that the court should consider miscarriage of justice claims not raised below, the court said, 380 Mass. at 868 n. 2, 406 N.E.2d at 1021 n. 2, "We observe that whether or not a case has § 33E statutory eligibility, we have long since applied a similar standard of review as in part 3 above." Part 3 reads as follows,

Ordinarily, such inattention of counsel would preclude review of the issue on our part. *Commonwealth v. Johnson*, 379 Mass. [177, 396 N.E.2d 974] (1979). *Commonwealth v. Cook*, 351 Mass. 231, 237 [, 218 N.E.2d 393], cert. denied, 385 U.S. 981 [, 87 S.Ct. 529, 17 L.Ed.2d 443] (1966). "Nevertheless, we are mindful that 'in appropriate instances this court has and will exercise the power to set aside a verdict or finding in order to prevent a miscarriage of justice when a decisive matter has not been raised at trial.'" *Commonwealth v. Johnson, supra* [379 Mass.] at 178 [, 396 N.E.2d 974], quoting from *Commonwealth v. Conroy*, 333 Mass. 751, 757 [, 133 N.E.2d 246] (1956). See *Commonwealth v. Goulet*, 374 Mass. 404, 415–416 [, 372 N.E.2d 1288] (1978). Therefore, we examine the defendant's contentions under this standard.

*Id.* 380 Mass. at 864, 406 N.E.2d at 1019. Hence, if a non-new miscarriage of justice point is discovered following a defendant's unsuccessful appeal, there are no restrictions in Rule 30; neither the receipt of plenary review, nor § 33E itself, bars capital defendants from superior court consideration. However, since the point is not new, the capital defendant has no appeal—an unusual position, incidentally, for the judge—while the noncapital defendant can appeal freely.

Does the mere, unrealized hope that the Supreme Judicial Court will uncover points justify this serious disparity? The value of that hope has been appraised by the court itself. In not restricting second degree defendant Lattimore's appeal, though he had received the full statutory review, it is apparent that it is the statute, and not any substantive quid pro quo, that requires cutting off an appeal. In point of fact, in Dickerson's own case, *Dickerson v. Attorney General,* the court's opinion discloses a failure to appreciate the extent of the disparity suffered by the capital defendant. As indicating the lack of "substance," the court said, 396 Mass. at 742 n. 2, 488 N.E. 2d 757, 759 n. 2,

> In reviewing a postconviction motion of a noncapital defendant, the Appeals Court will not consider claims of error which could have been raised at trial or on direct appeal, but were not so raised. See *Commonwealth v. Buckley,* 17 Mass.App.Ct. 373, 374 [, 458 N.E.2d 781] (1984).... [T]he merits of [either] defendant's postconviction motion will not be reached unless he presents a new and important issue to the court.

*Buckley,* actually held exactly the opposite. The noncapital defendant is not limited in his appeal to new claims if they involve a miscarriage of justice.

What it comes down to is this. In the *Leaster–Greene* decisions the court was not faced with a constitutional challenge, and, in a rescript, may not have thought deeply. I can see no other explanation for the contradiction. Thereafter there was no occasion to look back and reconsider. It was only when Dickerson put the question in equal protection terms that the court made a re-evaluation, and then it discussed procedure and misapprehended substance. I can not think that misdescribing the holding in *Buckley* was, in effect, a sub-silentio overruling. There is no basis in precedent, or in Rule 30(c)(8) any reason, for questioning what *Buckley* held with respect to Rule 30 motions. Hence I believe that we should view the disparity for what it is, and has been shown to be in the other Massachusetts cases cited, and, with great respect to the Supreme Judicial Court, not view that court as having determined that this difference in substance has a rational basis. Rather, the tenor of the opinion is simply that, because of prior familiarity with the case the special single justice procedural screening is warranted in the "[i]nterests of judicial economy," 396 Mass. at 744, 488 N.E.2d at 760, and that nothing of substance is lost.

If that were all, if, in fact, note 2 in *Dickerson* were correct rather than, with due apologies, a footnote inadvertency, I would have no problem. I realize that "rational-basis scrutiny ... is the most relaxed and tolerant form of judicial scrutiny," *City of Dallas v. Stanglin,* —— U.S. ——, ——, 109 S.Ct. 1591, 1595, and there well may be a rational basis for adopting different methods to screen out unjustified appeals. There is a wide difference, however, between limiting access to dance-halls to protect minors, and distinguishing, in the interests of judicial economy, between criminal defendants on the basis of the substance of their appeals, particularly at the cost of capital defendants who, by hypothesis, have claims in the category of miscarriage of justice that were overlooked.

I respectfully dissent.